**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UHLIG LLC d/b/a CONDOCERTS™ ) | |
| AND d/b/a WELCOMELINK® ) | |
|       **Plaintiff,** ) | **CASE NO. _____** |
| ) | |
| **v.** ) | **JURY TRIAL DEMANDED** |
| ) | |
| CORELOGIC, INC. ) | |
|       **Defendant.** ) | |

### COMPLAINT

Plaintiff Uhlig LLC d/b/a CondoCerts™ and WelcomeLink® ("Plaintiff"), by and through its attorneys and for its Complaint against Defendant CoreLogic, Inc. ("CoreLogic" or "Defendant"), states and alleges as follows:

### INTRODUCTION

1.    Plaintiff is a national provider, *inter alia*, of resale and lender processing information for common interest communities, including but not limited to homeowner associations, condominiums, co-ops, and similar communities, wherein the deed to property is encumbered by certain obligations to the common community ("Common Interest Communities").

2.    Plaintiff provides time-sensitive data and other information regarding Common Interest Communities and their residents ("Community Information") to retail customers under contractual terms and conditions set forth in Plaintiff's website, registration, upload and ordering agreements and expressly accepted as a condition of doing business with Plaintiff ("Plaintiff's Customer Agreements").

4883-8629-7604.1

3.      Plaintiff does business under the brands CondoCerts™ and WelcomeLink®
(collectively, "Plaintiff's Marks").

4.      Plaintiff provides Community Information as the authorized representative of its
clients, including Common Interest Communities and/or property management companies which
serve as managing agents for Common Interest Communities (collectively "Plaintiff's Clients").
As the authorized representative of Plaintiff's Clients, Plaintiff provides timely, authoritative
Community Information to registered end users who require such information for legitimate
purposes such as the purchase, sale, financing, refinancing and transfer of residential real estate
located in Common Interest Communities. The Community Information is jointly created,
maintained, managed and updated by Plaintiff and Plaintiff's Clients.

5.      Among the other kinds of information it offers, Plaintiff provides Community
Information that is specific to properties that are being resold or refinanced ("Resale
Information"). The Resale Information provided by Plaintiff is perishable, time-sensitive, and
may include detailed financial and legal information regarding one or more residential units or
owner accounts.

6.      As part of the residential mortgage process, Plaintiff also provides Community
Information related to the Common Interest Community as a whole ("Underwriting
Information").  Underwriting Information includes such information as pending litigation,
obligations and financial balances of the Common Interest Community as of a specific date.
Banks, mortgage companies, credit unions, investors, brokers, lenders, government-sponsored
enterprises, housing finance agencies, financing sources, title companies, buyers, sellers and
other third parties ("Transaction Participants") rely on the accuracy of Underwriting Information

2

in making financial decisions and risk assessments, including but not limited to the approval of home mortgages, the determination of credit terms, and other significant matters.

7.      Because Resale Information and Underwriting Information are perishable, time-sensitive, rapidly changing, economically sensitive, and not publicly available, Plaintiff's certification of Resale Information and Underwriting Information is valid only for a limited period of time, and its use is expressly conditioned upon acceptance of Plaintiff's Customer Agreements.

8.      Plaintiff's Customer Agreements are designed to protect the integrity of the Community Information, and to prevent fraudulent, incorrect, obsolete, incomplete, counterfeit or falsified information from being introduced into the national mortgage financing process or otherwise misleading Transaction Participants who rely on such information. Conversely, the misuse, misrepresentation and/or falsification of the Community Information in violation of Plaintiff's Customer Agreements creates significant risks of error, confusion, and financial loss among Transaction Participants who rely on such unauthorized and/or falsified Community Information.

9.      Plaintiff provides the Community Information for a fee that, in certain instances, is statutorily regulated.  Plaintiff typically retains a processing fee and the balance of the payment collected is remitted to Plaintiff's Clients.

10.      Defendant is a customer of Plaintiff and has placed repeated orders through online sites operated by Plaintiff under both of Plaintiff's Marks. Defendant has at all times been aware of Plaintiff's Customer Agreements and has knowingly and expressly accepted Plaintiff's Customer Agreements during the ordering process. In correspondence dating back at least to

March 2018, Plaintiff has further stressed to Defendant and Defendant's legal counsel in writing that its products and services are governed by Plaintiff's Customer Agreements and are not offered outside those terms.

11.     Recently, Plaintiff has learned that Defendant has, without authorization from or notice to Plaintiff, fraudulently attached Plaintiff's preparer certification and signature to Community Information using the CondoCerts™ mark that was not in fact authorized, prepared or certified by Plaintiff, including Community Information that had expired, was incorrect, was commingled with information that was not produced or authorized by Plaintiff, and was resold without authorization from or notice to Plaintiff. On more than one occasion, Defendant has fabricated and sold documents that include an unauthorized reproduction of the signature of a CondoCerts' preparer and the CondoCerts™ mark.  On at least one occasion, Defendant engaged in this fraudulent misrepresentation of the source of the information provided for a property that was no longer even Plaintiff's client.

12.     Upon information and belief, in violation of Plaintiff's Customer Agreements, Defendant also has systematically retained, reproduced and reformulated Community Information that was obtained from Plaintiff's systems, for the purpose of falsely holding itself out to Transaction Participants as an authorized source of Community Information for Plaintiff's Clients. Upon information and belief, Defendant has used this wrongfully obtained, outdated data and information with one or both of Plaintiff's Marks to process thousands of document orders without payment or notice to Plaintiff, and without notice to unsuspecting Transaction Participants, with the intent and representation that such Transaction Participants rely on such

4

out-of-date, bootleg information even though it was not authorized, verified or certified by Plaintiff.

13.     In obtaining this information from Plaintiff, Defendant and its agents have consistently and expressly agreed to abide by Plaintiff's Customer Agreements. The pattern and character of Defendant's orders, however, indicate that such representations were false, designed to induce Plaintiff to grant Defendant access to Plaintiff's systems for purposes that are prohibited by Plaintiff's Customer Agreements, and detrimental to Plaintiff, Plaintiff's Clients, and Transaction Participants that rely on the integrity of the Community Information involved.

14.     Defendant has tried to legitimize its conduct, first by offering a proposed contract to Plaintiff that would have modified Plaintiff's Customer Agreements and allowed Defendant to resell the Community Information. Plaintiff rejected Defendant's proposal and declined to execute the tendered agreement. Defendant then attempted, unilaterally and without discussion, much less Plaintiff's agreement, to insert language in a custom CondoCerts™ document template purporting to grant Defendant unrestricted permission to retain and resell the Community Information for Defendant's own commercial purposes.

15.     When confronted by Plaintiff about its violations of Plaintiff's Customer Agreements, Defendant asserted that it would have no use for the Community Information if it abided by Plaintiff's Customer Agreements.

16.     Defendant's actions violate the Lanham Act and the Delaware Deceptive Trade Practice Act, are in breach of its agreements with Plaintiff, tortiously interfere with Plaintiff's business expectancies, and are fraudulent. Plaintiff is entitled to an order permanently enjoining Defendant from reselling the Community Information for commercial purposes, actual damages,

4883-8629-7604.1

disgorgement of Defendant's profits, treble damages, punitive damages, applicable penalties, statutory damages, reasonable costs and attorneys' fees.

## PARTIES

17.     Plaintiff is a Delaware limited liability company, with its principal place of business at 8455 Lenexa Drive, Overland Park, Kansas 66214.

18.     Defendant is a Delaware corporation with its principal place of business at 40 Pacifica Avenue, Suite 900, Irvine, California 92618.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction under 15 U.S.C. §1121 and 28 U.S.C. § 1331, as one of the claims presents a federal question. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

20.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, and the contracts at issue contain a forum selection clause for this District.

## GENERAL ALLEGATIONS

21.     Plaintiff is in the business, among other services, of assembling, managing and processing accurate, up-to-date, real-time Community Information, including but not limited to Resale Information and Underwriting Information.

22.     The Community Information assembled by Plaintiff includes but is not limited to estoppels, account histories, questionnaires, association documents, total association units and units sold, type of units and restrictions, commercial and residential mix, development phase

information, association rental policies, association liens and lawsuits, budgets, and ownership information.

23.     As the authorized representative of Plaintiff's Clients, Plaintiff processes, consolidates, packages, and sells the Community Information to various parties including but not limited to Transaction Participants. The information is utilized by these entities for purposes that include the sale, financing, refinancing, and transfer of homes and condominium units.

24.     In connection with selling its Community Information, Plaintiff offers customers the option of developing a custom form on which the customer may include its own brand, colors, and other information (a "Custom Form").

25.     Because Resale Information and Underwriting Information are perishable, time-sensitive, rapidly changing, economically sensitive, and not publicly available, Plaintiff's certification of Resale Information and Underwriting Information is valid only for a limited period of time, and its use is expressly conditioned upon acceptance of one or more of Plaintiff's Customer Agreements, depending on the nature of the specific order involved.

26.     Plaintiff's Customer Agreements include but are not limited to: 1) Terms of Use; 2) an Account Registration Agreement; 3) an Information Upload Agreement; and 4) an Order Submission Agreement.

27.     To purchase Community Information from Plaintiff, a customer is required to execute specific actions on an online ordering site operated by Plaintiff under one of Plaintiff's Marks (each, an "Ordering Site").

28.     Each major step in the ordering process requires the customer's express agreement and consent as a condition of proceeding with an order.  Specifically, the major steps

in the ordering process include: 1) review and acceptance of the Terms of Use as a condition of entering the Ordering Site; 2) review and acceptance of the Account Registration Agreement as a condition of gaining access to the ordering functionality of the Ordering Site; 3) review and acceptance of the Information Upload Agreement as a condition of uploading a Custom Form; and 4) review and acceptance of the Order Submission Agreement as a condition of placing an order.

29.     The Terms of Use, *inter alia*, prohibit all customers, including Defendant, from reselling Community Information for commercial purposes.

30.     The Account Registration Agreement, *inter alia*, prohibits all customers, including Defendant, from reselling Community Information for commercial purposes.

31.     The Information Upload Agreement, *inter alia*, prohibits all customers, including Defendant, from reselling Community Information for commercial purposes.

32.     The Order Submission Agreement, *inter alia*, prohibits all customers, including Defendant, from reselling Community Information for commercial purposes.

33.     According to its recent filings with the United States Security and Exchange Commission, Defendant reported annual sales in fiscal year 2020 of $1.6 billion, with net income of $301 million and assets of $4.3 billion.

34.     Upon information and belief, Defendant has begun marketing and selling Community Information under the brand name "CondoSafe."

35.     According to a Defendant brochure, CondoSafe claims to provide the following features:

> CondoSafe™ from CoreLogic® is a one-stop condo project review tool that
> enables lenders to have a single, consistent, standardized review process.

> CondoSafe delivers a complete document package that is compiled and screened
> by CoreLogic for completeness and data quality. What's more, the CondoSafe
> Report provides at-a-glance indicators for potential GSE and investor eligibility
> issues.

36.     Defendant has placed thousands of orders for Community Information from Plaintiff using the Ordering Sites.

37.     Defendant and its agents have accepted and agreed to the Terms of Use as a requirement of using the Ordering Sites.

38.     Defendant and its agents have accepted and agreed to the terms of the Account Registration Agreement as a requirement of registering an account for the purpose of ordering products and services on the Ordering Sites.

39.      Defendant and its agents have accepted and agreed to the terms of the Information Upload Agreement as a requirement of ordering a Custom Form.

40.     Defendant and its agents have accepted and agreed to the terms of the Order Submission Agreement as a requirement of placing an order through the Ordering Sites.

41.     Upon information and belief, Defendant has held itself out to Transaction Participants as having the ability to provide Community Information which Defendant obtained from Plaintiff and which Defendant is not authorized to sell for commercial purposes.

42.     Defendant knows that Plaintiff's Customer Agreements prohibit Defendant, as a customer, from reselling Community Information for commercial use.

43.     In 2018, a Defendant representative contacted Plaintiff and acknowledged that Defendant was reselling Community Information for commercial use.

44.     Defendant's representative acknowledged that Defendant's resale of the Community Information was contrary to Plaintiff's Customer Agreements.

45.     Defendant's representative tendered Plaintiff a draft agreement which purportedly would allow Defendant to continue to resell Community Information for commercial use.

46.     Plaintiff rejected the proffered agreement.

47.     Plaintiff instructed Defendant to comply with Plaintiff's Customer Agreements and, in particular, their prohibition against resale of the Community Information for commercial use.

48.     Plaintiff later learned that Defendant had refused to follow Plaintiff's instructions.

49.     Instead, Defendant continued submitting orders for Community Information and reselling the information for commercial use, in violation of Plaintiff's Customer Agreements.

50.     Upon information and belief, Defendant has submitted thousands of orders for Community Information that it has resold for commercial purposes in violation of Plaintiff's Customer Agreements.

51.     Plaintiff has never authorized Defendant to resell Plaintiff's Community Information for commercial purposes.

52.     In addition, Plaintiff learned that Defendant impermissibly manipulated the custom "Project Questionnaire" forms that Defendant used to display Community Information. Defendant's manipulation of these Project Questionnaire forms included language that, in violation of Plaintiff's Customer Agreements, purports to unilaterally grant Defendant authority to resell the Community Information for commercial use.

53.     Plaintiff further has learned that, when reselling Community Information, Defendant has included, at minimum, CondoCerts'™ mark and preparer signatures on Defendant's "CondoSafe Report" forms. In addition, Defendant falsely represents to its

10

customers that the Community Information provided by Defendant has been "certified" by Plaintiff.  In making these representations to its customers, Defendant is falsely identifying CondoCerts™ as the originator of purportedly verified, accurate and timely information.

54.     By including CondoCerts'™ mark and preparer signatures, Defendant falsely represents to its customers that Defendant is reselling the Community Information with Plaintiff's permission and that the information provided is authorized, timely, verified and accurate.

55.     Because the Community Information provided by Plaintiff is perishable, time-sensitive, rapidly changing, economically sensitive, and not publicly available, Defendant's actions have exposed Plaintiff and unsuspecting Transaction Participants to potentially significant financial and reputational harm, diverted revenue from Plaintiff and Plaintiff's Clients, and damaged Plaintiff's Marks.

56.     By letter dated June 29, 2021, counsel for Plaintiff demanded that Defendant cease and desist reselling Plaintiff's Community Information for commercial use and to take additional remedial action.

57.     By letter dated July 26, 2021, counsel for Defendant acknowledged that Defendant had been reselling Plaintiff's Community Information yet refused to agree to stop or to take other remedial actions demanded by Plaintiff.

**FIRST CLAIM FOR RELIEF**
**(Violation of the Lanham Act, 15 U.S.C. § 1125)**

58.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

59.     The Lanham Act, 47 U.S.C. § 1125(a)(1), imposes liability on persons who, in connection with any goods or services, uses any word, term, name, symbol, or device, or any combination thereof, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another, or as to the sponsorship or approval of his or her goods, services, or commercial activities by another person.

60.     Plaintiff has used the CondoCerts™ mark continuously for commercial purposes since Defendant began purchasing Community Information from Plaintiff.

61.     Plaintiff owns the CondoCerts™ mark.

62.     Plaintiff also has used the WelcomeLink® mark continuously for commercial purposes since Defendant began purchasing Community Information from Plaintiff.

63.     The WelcomeLink® mark is registered with the United States Patent and Trademark Office as Registration No. 3674946.

64.     Plaintiff owns the WelcomeLink® mark.

65.     Through its actions described above, Defendant has violated the Lanham Act by implying to its customers in the CondoSafe Report form that the Community Information it resold to these customers was provided with permission by Plaintiff and representing to its customers that the Community Information it resold contained accurate and timely Community Information that was "certified" by Plaintiff, when in fact, Plaintiff never permitted Defendant to resell this Community Information, Plaintiff did not "certify" the accuracy of the information provided, and such information likely was inaccurate given the time that had passed between Plaintiff providing the Community Information to Defendant and when Defendant resold the information to its customers.

12

66.     Upon information and belief, Defendant has willfully and knowingly used the CondoCerts™ mark to cause confusion or mistake, and/or to deceive its customers into believing that the Community Information was provided by Defendant with the knowledge and permission of Plaintiff and is accurate and timely.

67.     Upon information and belief, Defendant has willfully and knowingly used the WelcomeLink® mark to cause confusion or mistake, and/or to deceive its customers into believing that the Community Information was provided by Defendant with the knowledge and permission of Plaintiff and is authorized, accurate and timely.

68.     Defendant's use of Plaintiff's Marks has caused and is continuing to cause confusion among consumers of Community Information, including Transaction Participants.

69.     By Defendant's violations, Plaintiff has suffered damage to its reputation and additional economic harm.

70.     Because Defendant's unauthorized use of Plaintiff's Marks is willful, intentional, and intended to deceive, this is an exceptional case.

### SECOND CLAIM FOR RELIEF
**(Breach of Contract – Terms of Use)**

71.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

72.     The Terms of Use prohibit resale of Community Information for commercial purposes.

73.     Defendant agreed to abide by the Terms of Use as a requirement of using Plaintiff's Ordering Sites.

13

74.     The Terms of Use constitutes a valid and enforceable contract between Plaintiff and Defendant.

75.     Defendant breached the Terms of Use by reselling Community Information for commercial purposes.

76.     As a result of Defendant's breach, Plaintiff has suffered damages.

### THIRD CLAIM FOR RELIEF
**(Breach of Contract – Account Registration Agreement)**

77.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

78.     The Account Registration Agreement iprohibits resale of Community Information for commercial purposes.

79.     Defendant agreed to abide by the Account Registration Agreement as a requirement of being allowed to register an account for the purpose of ordering products and services from Plaintiff.

80.     The Account Registration Agreement constitutes a valid and enforceable contract between Plaintiff and Defendant.

81.     Defendant breached the Account Registration Agreement by reselling Community Information for commercial purposes.

82.     As a result of Defendant's breach, Plaintiff has suffered damages.

### FOURTH CLAIM FOR RELIEF
**(Breach of Contract – Information Upload Agreement)**

83.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

14

84.     The Information Upload Agreement prohibits resale of Community Information for commercial purposes.

85.     Defendant agreed to abide by the Information Upload Agreement as a requirement of being allowed to upload Custom Forms related to the ordering of Community Information from Plaintiff.

86.     The Information Upload Agreement constitutes a valid and enforceable contract between Plaintiff and Defendant.

87.     Defendant breached the Information Upload Agreement by reselling Community Information for commercial purposes.

88.     As a result of Defendant's breach, Plaintiff has suffered damages.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Contract – Order Submission Agreement)**

89.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

90.     The Order Submission Agreement prohibits resale of Community Information for commercial purposes.

91.     Defendant agreed to abide by the Order Submission Agreement as a requirement of being allowed to order Community Information from Plaintiff.

92.     The Order Submission Agreement constitutes a valid and enforceable contract between Plaintiff and Defendant.

93.     Defendant breached the Order Submission Agreement by reselling Community Information for commercial purposes.

94.     As a result of Defendant's breach, Plaintiff has suffered damages.

15

## SIXTH CLAIM FOR RELIEF
### (Common Law Fraud)

95.    Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

96.    On each occasion that Defendant has sold a CondoSafe Report form to its customer, where Defendant represents that the originator of the information is CondoCerts™ or WelcomeLink®, Defendant made a fraudulent representation that it was selling the information with the permission and authorization of Plaintiff and that Plaintiff was ensuring the accuracy of the information.

97.    Plaintiff believes that discovery will show thousands of additional instances of fraudulent representations in the CondoSafe Reports. This is information that is in the possession of Defendant, not Plaintiff.

98.    These fraudulent representations were false at the time they were made and intended by Defendant to convince its customers that Plaintiff had originated and verified the accuracy of the Community Information at the time it was provided to Defendant's customer and was being submitted by Defendant with the permission and authorization of Plaintiff.

99.    As a result of Defendant's fraudulent representations, Plaintiff has been damaged.

## SEVENTH CLAIM FOR RELIEF
### (Tortious Interference with Business Expectancy)

100.    Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

101.    As a provider of Community Information, Plaintiff has legitimate expectations to conduct business with purchasers of such information in the Common Interest Community

industry, including lenders and other customers who purchase Community Information from Defendant that Defendant obtained from Plaintiff.

102.    By reselling Plaintiff's Community Information to its customers, Defendant interferes with CondoCerts' business expectancy by selling information to customers who otherwise would purchase Community Information from Plaintiff.

103.    Defendant's interference with Plaintiff's business expectancy is unjustified in that the interference is predicated on Defendant's resale of Plaintiff's Community Information, which resale is prohibited under Plaintiff's Customer Agreements.

104.    As a result of Defendant's unjustified interference with Plaintiff's business expectancy, Plaintiff has been damaged.

## EIGHTH CLAIM FOR RELIEF
### (Violation of the Delaware Deceptive Trade Practices Act, 6 Del.C § 2531 *et seq.*)

105.    Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

106.    The Delaware Deceptive Trade Practices Act, 6 Del. C § 2531 *et seq.,* prohibits business entities from engaging in activities that cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and represent any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

4883-8629-7604.1

107.    Through its actions described above, Defendant has violated the provisions of the Delaware Deceptive Practices Act by implying to its customers in the CondoSafe Report that the Community Information it resold to these customers was provided with the permission and authority of Plaintiff and representing to its customers that the Community Information it resold contained accurate and timely data that was "certified" by Plaintiff, when in fact Plaintiff never permitted Defendant to resell this Community Information, Plaintiff did not "certify" the accuracy of the information provided, and where such information likely was inaccurate given the time that had passed between Plaintiff providing the Community Information to Defendant and when Defendant resold the information to its customers.

108.    By Defendant's violations, Plaintiff has suffered damage to its reputation and additional economic harm.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff Uhlig LLC d/b/a CondoCerts™ and d/b/a WelcomeLink® prays that judgment be entered in its favor and against Defendant CoreLogic, Inc. on each and every claim asserted herein, and that it be awarded all damages to which it is entitled under law, including but not limited to the following relief:

1.    An injunction permanently enjoining Defendant from reselling the Community Information for commercial use;

2.    Disgorgement of all profits and other benefits received based on CoreLogic's reselling the Community Information for commercial use;

3.    A constructive trust imposed on Defendant's profits from reselling the Community Information;

4883-8629-7604.1

4.       Actual damages to Plaintiff in an amount to be proven at trial;

5.       An award of treble damages;

6.       An award of costs and attorney fees as allowed by applicable law;

7.       Pre-judgment and post-judgment interest;

8.       Punitive damages;

9.       Where provided for by statute and in the alternative, statutory damages; and

10.      Any such further relief as this Court deems just and proper under the circumstances.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff hereby designates Kansas City, Kansas as the place of trial.

## **JURY DEMAND**

Plaintiff requests a jury on all issues and claims that are triable to a jury.

Respectfully submitted this 22nd day of November, 2021.

KUTAK ROCK LLP

*s/ Juliet A. Cox*
Juliet A. Cox, KS Bar #17016
Two Pershing Square
2300 Main Street, Suite 800
Kansas City, MO 64108
Tel: (816) 960-0090
Fax: (816) 960-0041
Juliet.cox@kutakrock.com

Thomas W. Snyder, CO Bar #33106
(*pro hac vice forthcoming*)
Kutak Rock LLP
1801 California St., Suite 3000
Denver, CO 80202
Tel: 303-297-2400
Fax: 303-292-7700
Thomas.snyder@kutakrock.com
***ATTORNEYS FOR PLAINTIFF***

19