**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UHLIG LLC,

      **Plaintiff/Counter Defendant,**

v.

                                          **Case No. 21-2543-DDC-GEB**

CORELOGIC, INC., et al.,

      **Defendants/Counter Claimants.**

_____

**MEMORANDUM AND ORDER**

Plaintiff/Counter Defendant Uhlig LLC ("Uhlig") has filed two motions: (1) a Motion to

Review Plaintiff's Objections to Magistrate Judge Birzer's February 6, 2023 Order (Doc. 103);

and (2) "Motion to Dismiss Second Amended Counterclaims" (Doc. 105). Uhlig objects to

Judge Birzer's Order granting defendants/counter claimants CoreLogic, Inc. and CoreLogic

Solutions, LLC's (collectively "CoreLogic") Motion for Leave to file a Second Amended

Counterclaim. Also, Uhlig moves to dismiss CoreLogic's Second Amended Counterclaim under

Fed. R. Civ. P. 12(b)(6) because it fails to state a plausible claim for relief. CoreLogic has filed

Responses opposing both motions (Docs. 107, 110). And Uhlig has filed Replies (Docs. 113,

114).[1]

---

[1]      Both parties have violated the court's local rule governing page limits on briefing for motions to
dismiss. For motions to dismiss, our court's local rule requires that "briefs in support of, or in response
to, all motions . . . must not exceed 15 pages and replies must not exceed 5 pages." D. Kan. Rule
7.1(d)(3). The parties' briefing on the Motion to Dismiss doesn't comply with this rule. Uhlig's brief
supporting its Motion to Dismiss spans 20 pages, not including the Certificate of Service page. Doc. 106.
CoreLogic's brief opposing the Motion to Dismiss is 16 pages, not including the caption page, Table of
Contents, Table of Authorities, and signature block. Doc. 110. And Uhlig's Reply is 9 pages, not
including the Certificate of Service page. Doc. 114.

In response to the parties' failure to comply with the court's local rule, the court has considered
striking the parties' briefing from the docket and ordering them to refile their papers. Indeed, the court
has followed that procedure in other cases where the parties submitted excessive briefing on motions. But

The gist of the dispute here is whether Judge Birzer erred by permitting CoreLogic to file a Second Amended Counterclaim asserting three new claims against Uhlig—after the district court already had dismissed eight counterclaims that CoreLogic had pleaded in an earlier iteration of its Counterclaim and after the deadline for amending pleadings had expired.  As discussed below, it's a close call.

The court is skeptical that CoreLogic sufficiently demonstrated good cause to permit the amendment as required by Fed. R. Civ. P. 16.  But, in the end, the court concludes that Judge Birzer didn't abuse her discretion when finding good cause existed to permit the amendment.  Also, the court concludes that CoreLogic's three new counterclaims plausibly state a claim against Uhlig—even though many of the allegations appear inherently inconsistent with allegations CoreLogic made in its earlier pleading.  Thus, the court concludes, Judge Birzer didn't err by allowing CoreLogic leave to file its Second Amended Counterclaim under Fed. R. Civ. P. 15.  For these reasons, the court denies Uhlig's Motion to Review Plaintiff's Objections to Magistrate Judge Birzer's February 6, 2023 Order (Doc. 103).  Also, because the court concludes that CoreLogic's Second Amended Counterclaim states plausible claims for relief under the new and significantly revised allegations, the court denies Uhlig's "Motion to Dismiss Second Amended Counterclaims" (Doc. 105).  The court explains how it reaches these conclusions, below.

---

the court won't do that here.  Instead, the court considers the parties' briefing as submitted because, the court concludes, it's more efficient and consistent with the aims of Rule 1 to address the Motion to Dismiss on the current briefing instead of requiring the parties to re-brief the motion.  But the court cautions the parties:  The parties must comply with the court's local rules going forward.  In the future, the court will strike any briefs exceeding the page limitations set forth by D. Kan. Rule 7.1.

# I.      Factual and Procedural Background

The following facts come from Uhlig's Amended Complaint (Doc. 63) or CoreLogic's

Second Amended Counterclaim (Doc. 100).  The court accepts the pleaded facts as true and

views them in the light most favorable to CoreLogic—the party opposing Uhlig's Motion to

Dismiss.  *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on a

motion to dismiss the court "accept[s] as true all well-pleaded factual allegations in the

complaint and view[s] them in the light most favorable to" the party opposing the motion

(citation and internal quotation marks omitted)).

## *The Parties*

Plaintiff/Counter Defendant Uhlig is a "national provider . . . of resale and lender

processing information for common interest communities, including but not limited to

homeowner associations, condominiums, co-ops, and similar communities, wherein the deed to

property is encumbered by certain obligations to the common community[.]"  Doc. 63 at 1 (Am.

Compl. ¶ 1).  Uhlig alleges that it "provides time-sensitive data and other information regarding

Common Interest Communities and their residents . . . to retail customers under contractual

terms and conditions set forth in [Uhlig's] website, registration, upload and ordering agreements

and expressly accepted as a condition of doing business with" Uhlig.  *Id.* at 1–2 (Am. Compl. ¶

2).  Uhlig "does business under the brands CondoCerts™ and WelcomeLink®[.]"  *Id.* at 2 (Am.

Compl. ¶ 3).

Defendant/Counter Claimant CoreLogic "is a global property information, analytics and

data-enabled services provider."  Doc. 100 at 12 (Second Am. Countercl. ¶ 7).  "One of

CoreLogic's products is CondoSafe," which "is a national service for lenders that provides

condominium-project data and analytics."  *Id.*  As part of a lender's due diligence in the

mortgage underwriting process, the lender typically asks the condominium owners association ("COA") of a condominium or other common-interest project "to provide due diligence information, such as a condominium questionnaire, COA governing documents, annual budget, capital reserves, litigation documents, [and] engineer's report," among other data. *Id.* (Second Am. Countercl. ¶ 9). CoreLogic collects this data by contacting the COA and requesting that it provide the data. *Id.* at 13 (Second Am. Countercl. ¶ 11). Sometimes, however, the COA doesn't supply the data and instead requires CoreLogic to secure the data through a third party vendor like Uhlig. *Id.* As CoreLogic describes it, Uhlig collects condominium data from COAs and then "sells it for a fee via its CondoCerts and Welcomelink websites." *Id.* (Second Am. Countercl. ¶ 12).

### *CoreLogic's Purchase of Data from Uhlig*

Since 2018, CoreLogic has purchased condominium data from Uhlig through Uhlig's websites. *Id.* at 14 (Second Am. Countercl. ¶ 16). In exchange for CoreLogic's payments, Uhlig provided CoreLogic with condominium data by completing, signing, and returning a condominium "Questionnaire" to CoreLogic. *Id.* Uhlig completed more than 9,000 Questionnaires over the course of almost four years. *Id.* And CoreLogic paid Uhlig more than $3,000,000 for the Questionnaires. *Id.*

When purchasing data from Uhlig, CoreLogic accepted Uhlig's form Terms of Use and Order Submission Agreement (collectively, "Terms of Use"). *Id.* (Second Am. Countercl. ¶ 17).[2] CoreLogic describes the Terms of Use as "boilerplate provisions." *Id.*

---

[2] The court considers Uhlig's Terms of Use and other customer agreements when deciding the Motion to Review and Motion to Dismiss. When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). A court "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"

Uhlig's Terms of Use—as well as its Account Registration Agreement, Information

Upload Agreement, and Order Submission Agreement—prohibit "all customers, including

[CoreLogic], from reselling Community Information for commercial purposes."  Doc. 63 at 8

(Am Compl. ¶¶ 29–32); *see also* Doc. 24 at 18 (Terms of Use Agreement) (prohibiting

customers from using Uhlig's services or websites "for resale or any commercial use

whatsoever"); *id.* at 51 (Order Submission Agreement) (containing a provision where the

customer agrees that it "will not, in any fashion, reproduce, copy, modify, alter, add to,

aggregate, compile, integrate, sell, distribute, or otherwise exploit or reuse for any commercial

purposes (other than your reimbursement for charges by your client or customer for which the

specific Order is made) any CondoCerts Services").  Also, the Terms of Use Agreement contains

the following agreement and provisions:

> You understand and agree that in the event you engage in any commercial activity
> that includes, compiles, analyzes, reproduces, relies upon or otherwise uses
> information you obtained through the Website or the CondoCerts Services that you
> will disgorge to CondoCerts all funds received that directly or indirectly result from
> such prohibited use in addition to any and all other remedies available at law or in
> equity.
>
> If you violate any of the terms of these Terms of Use, in addition to any other
> remedies CondoCerts may have, your permission to use the Website shall
> immediately terminate without the necessity of any notice.  CondoCerts retains the
> right to deny access to anyone at its discretion for any reason.

Doc. 24 at 20–21 (Terms of Use Agreement).

The Terms of Use Agreement—as well as Uhlig's other customer agreements—include

integration clauses.  They recite that the agreements "constitute the complete and exclusive

agreement" between Uhlig and its customer "with respect to the use of [CondoCerts] and

---

*Id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).  Here, the pleadings
refer to the Terms of Use and other customer agreements, they are central to CoreLogic's claims, and the
parties don't dispute their authenticity.  Thus, the court properly may consider the Terms of Use and other
customer agreements when deciding these motions.

supersede any and all prior" agreements "whether in oral, written or electronic form[.]"  *Id.* at

27–28 (Terms of Use Agreement); *see also id.* at 45–46 (Information Upload Agreement); *id.* at

55–56 (Order Submission Agreement).

Also, the Terms of Use Agreement, Information Upload Agreement, and Order

Submission Agreement contain an "Attempted Alteration" clause.  Doc. 24 at 28 (Terms of Use

Agreement); *id* at 46 (Information Upload Agreement); *id.* at 55–56 (Order Submission

Agreement).  The "Attempted Alteration" clause provides:

> For clarity, the CondoCerts Terms and Conditions, these Terms of Use, the Registration, the Privacy Policy and the Submission Agreements (and any clickwrap agreements to which User has assented on the Website) may not be superseded by or interpreted by any separate agreement.  No attempt by you to alter, modify, waive, supplement or append additional terms to the CondoCerts Terms and Conditions, these Terms of Use, the Registration, the Privacy Policy and/or any Submission Agreements and any agreements that have been physically signed by you and CondoCerts (and/or any click-wrap agreements to which User has assented on the Website), whether through Order Information, forms, documents, legends, signatures or other writing or content in any form that is added, uploaded or submitted by you or any third party (an "**Attempted Alteration**"), shall be effective or have any legal significance whatsoever, regardless whether such Attempted Alteration is retained, allowed, accepted and/or reproduced through the Website and CondoCerts Services; provided, however, that any such attempt by you to alter, modify, waive, supplement or append additional terms to this Agreement shall automatically, without any notice or action on our part, cause the CondoCerts Services and any Documents or other materials produced for you or on your behalf to be deemed to be ineffective and void for all purposes.

Doc. 24 at 28 (Terms of Use Agreement); *id.* at 46 (Information Upload Agreement) (containing

similar but not identical language); *see also id.* at 55–56 (Order Submission Agreement)

(containing similar but not identical language).

But, as CoreLogic alleges, Uhlig and CoreLogic expressly modified and amended these

contact provisions.  Doc. 100 at 14 (Second Am. Countercl. ¶ 17).  Specifically, Uhlig and

CoreLogic agreed to modify and amend the Terms of Use by agreeing that CoreLogic could use

Uhlig's condominium data for a commercial purpose—*i.e.*, by agreeing that CoreLogic could

6

provide the information to CoreLogic's mortgage lender and other customers. *Id.* This agreement is contained in the Questionnaires that Uhlig signed and returned to CoreLogic. *Id.* The Questionnaires contain an express statement, signed by Uhlig, giving CoreLogic permission to use Uhlig's data for this commercial purpose (the "Grant of Authority"). *Id.*

This Grant of Authority in the signed Questionnaires provides: "'The undersigned [Uhlig agent] certifies that to the best of their knowledge and belief, the information contained herein and in any addendum or attachments is true and correct and authorizes CoreLogic to utilize the information and provide it to mortgage lenders and other third parties without restriction.'" *Id.* at 14–15 (Second Am. Countercl. ¶ 18) (quoting Grant of Authority) (emphasis omitted); *see also* Doc. 24 at 62, 99, 109, 124.[3]

Uhlig knew about and approved of the Questionnaires, including the Grant of Authority in them. Doc. 100 at 15 (Second Am. Countercl. ¶ 19). Uhlig's management-level employees approved of the Questionnaire's contents, including the Grant of Authority. *Id.* (Second Am. Countercl. ¶ 20). Uhlig required CoreLogic—as part of Uhlig's procedures—to provide a blank copy of its Questionnaire to Uhlig for approval. *Id.* CoreLogic provided Uhlig with a blank copy of its Questionnaire on many occasions over the course of several years so that Uhlig could approve its contents. *Id.* And Uhlig's management-level employees, including Uhlig's "Customer Service Manager," approved the Questionnaire and its contents. *Id.* According to CoreLogic's allegations, Uhlig never had an issue with the Grant of Authority before it filed this lawsuit. *Id.* (Second Am. Countercl. ¶ 19).

---

[3]     The court considers the Questionnaires on these motions because they are "documents referred to in the" Second Amended Counterclaim, they "are central to [CoreLogic's] claim and the parties do not dispute the documents' authenticity." *Smith*, 561 F.3d at 1098 (citation and internal quotation marks omitted).

Before Uhlig acquired CondoCerts™ from Mutual of Omaha, Mutual of Omaha similarly granted CoreLogic permission to use the data for a commercial purpose. *Id.* Mutual of Omaha had executed and delivered to CoreLogic completed Questionnaires that included the Grant of Authority. *Id.* And when Uhlig acquired CondoCerts™ from Mutual of Omaha, Uhlig told Mutual of Omaha that it "'agreed to continue' to provide CoreLogic data consistent with the Grant of Authority." *Id.*

### *Uhlig Terminates CoreLogic's Access to Uhlig's Websites*

In November 2021, Uhlig blocked CoreLogic's access to Uhlig's websites "effective immediately[.]" *Id.* at 17 (Second Am. Countercl. ¶ 25). Uhlig did so because—it asserted—CoreLogic was violating Uhlig's Terms of Use by using Uhlig's data for a commercial purpose, *i.e.*, by providing the data to mortgage lenders and other third-parties. *Id.* But, according to CoreLogic, its use of the data was consistent with terms agreed to in the Grant of Authority. *Id.*

After Uhlig terminated CoreLogic's access to data available exclusively from Uhlig, CoreLogic was unable to service a substantial portion of its customers as it had done previously and in reliance on the parties' agreement. *Id.* (Second Am. Countercl. ¶ 26). Uhlig's conduct caused CoreLogic to discontinue its CondoSafe business. *Id.* As a result, CoreLogic has sustained damages in the form of lost investment, lost profits, and reputational harm. *Id.* This lawsuit followed.

### *Uhlig's Claims and CoreLogic's Counterclaims*

Uhlig sued CoreLogic, claiming (1) violations under the Lanham Act, 47 U.S.C. § 1125(a)(1) for CoreLogic's allegedly unauthorized use of Uhlig's trademarks, (2) breach of contract for CoreLogic's alleged violation of Uhlig's Terms of Use Agreement, (3) breach of contract for CoreLogic's alleged violation of Uhlig's Account Registration Agreement, (4)

breach of contract for CoreLogic's alleged violation of Uhlig's Information Upload Agreement, (5) breach of contract for CoreLogic's alleged violation of Uhlig's Order Submission Agreement, (6) fraud, (7) tortious interference with business expectancy, and (8) violation of the Delaware Deceptive Trade Practices Act, Del. Code Ann. tit. 6, §§ 2531–2536.  Doc. 63 at 12–18 (Am. Compl. ¶¶ 58–108).[4]

CoreLogic responded to Uhlig's lawsuit by filing an Answer and Counterclaim.  Doc. 67. CoreLogic's Counterclaim asserted eight claims against Uhlig for:  (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) tortious interference with contractual relations, (4) promissory estoppel, (5) unlawful exclusivity arrangements violating Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, (6) attempted monopoly violating Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, (7) unlawful exclusivity arrangements violating Section 3 of the Clayton Act, 15 U.S.C. § 14, and (8) violation of the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511–2528.  *Id.* at 25–38 (Countercl. ¶¶ 59–141).

On September 30, 2022, the court granted Uhlig's Motion to Dismiss CoreLogic's Counterclaim, and it dismissed CoreLogic's eight claims in its Counterclaim.  Doc. 81.  Then, in November 2022, CoreLogic filed a "Motion . . . for Leave to File Second Amended Counterclaims."  Doc. 89.  Among other things, CoreLogic asked for leave to file a Second Amended Counterclaim "for breach of contract and contract-related claims based on [Uhlig's] standard terms and conditions as modified by the parties' nearly four-year course of conduct from 2018 through late 2021."  *Id.* at 7.  Uhlig opposed the request for leave, arguing that (1) CoreLogic's proposed amended counterclaims were untimely, and thus CoreLogic lacked good

---

[4]       The court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because Uhlig brings a claim under the federal Lanham Act.  The court has supplemental jurisdiction under 28 U.S.C. § 1367 over Uhlig's state law claims and CoreLogic's Second Amended Counterclaim.

cause for securing permission to file the amendment, and (2) the proposed amended counterclaims were futile because they wouldn't survive a Rule 12(b)(6) motion to dismiss.  *See generally* Doc. 91.

On February 7, 2023, Magistrate Judge Birzer granted CoreLogic's Motion for Leave and ordered CoreLogic to file its proposed Answer, Affirmative Defenses, and Second Amended Counterclaim.  Doc. 99.  CoreLogic filed its pleading that same day.  Doc. 100.  The Second Amended Counterclaim asserts three claims against Uhlig:  (1) breach of contract based on "an agreement of indefinite term pursuant to Uhlig's Terms of Use as modified by the parties' years-long course of dealing and evidenced by the over 9,000 signed Questionnaires that included the Grant of Authority[;]" *id.* at 17 (Second Am. Counterclaim ¶ 28); (2) breach of the covenant of good faith and fair dealing based on Uhlig's repudiation and termination of the parties' agreement under the Terms of Use as modified by the parties' course of dealing and the more than 9,000 signed Questionnaires; and (3) tortious interference with contractual relations; *see id.* at 17–19 (Second Am. Countercl. ¶¶ 27–41).

Invoking Fed. R. Civ. P. 72, Uhlig objects to Judge Birzer's Order granting CoreLogic leave to amend and asks the district court to overrule her Order allowing CoreLogic to file its Second Amended Counterclaim.  Separately, invoking Fed. R. Civ. P. 12(b)(6), Uhlig moves the court to dismiss all three claims that CoreLogic asserts against Uhlig in the Second Amended Counterclaim.  It asserts that CoreLogic's three claims fail to state a claim for relief.  After addressing Uhlig's Rule 72 objection, the court addresses CoreLogic's Motion to Dismiss, below.

II.     **Motion To Review Plaintiff's Objections to Magistrate Judge Birzer's February 6, 2023 Order (Doc. 103)**

Uhlig objects to Judge Birzer's February 6, 2023 Order granting CoreLogic leave to file its Second Amended Counterclaim.  Doc. 103.  The court addresses Uhlig's objections in the analysis section, below.  But first, the court recites the legal standard governing objections to a magistrate judge's order.

### A.  Rule 72 Standard of Review

Federal Rule of Civil Procedure 72(a) permits a party to present specific, written objections to a magistrate judge's order.  When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "'clearly erroneous or contrary to law' standard of review."  *See First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Under this clearly erroneous standard, the district court does not conduct a de novo review of the factual findings; instead, it must affirm a magistrate judge's order unless a review of the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp.*, 847 F.2d at 1464 (citation and internal quotation marks omitted).  In contrast, "the contrary to law" standard permits the district court to conduct an independent review of purely legal determinations made by the magistrate judge.  *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations omitted).  A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (citation omitted).

### B. Analysis

Uhlig asserts that Judge Birzer erred by granting CoreLogic's Motion for Leave to file its Second Amended Counterclaim.  CoreLogic filed its Motion for Leave on November 30, 2022 (Doc. 89)—more than six months after the Scheduling Order's deadline for filing motions to amend pleadings had expired on May 26, 2022 (Doc. 39 at 8).  Because CoreLogic's motion sought to amend a deadline established by the Scheduling Order, Judge Birzer applied Fed. R. Civ. P. 16—the rule that governs modification of a Scheduling Order.  Doc. 99 at 5–7.  After finding that CoreLogic had established good cause to modify the scheduling order and extend the deadline for seeking leave to amend the pleading under Fed. R. Civ. P. 16, Judge Birzer considered whether to grant CoreLogic leave to amend under Fed. R. Civ. P. 15.  *Id.* at 7–18.  Judge Birzer concluded that the claims in CoreLogic's proposed amended Counterclaim weren't futile, and thus, Judge Birzer granted its request for leave to file its Second Amended Counterclaim.  *Id.* at 10–18.

Uhlig doesn't argue that Judge Birzer's Order was contrary to law.  Nor could it.  Judge Birzer correctly applied Rule 16 to CoreLogic's request to file an amended pleading beyond the Scheduling Order's deadline.  And she correctly applied Rule 15 to CoreLogic's request for leave to amend.  Instead, Uhlig argues that Judge Birzer's Order was clearly erroneous.  Specifically, it asserts that Judge Birzer erred by concluding that CoreLogic satisfied Rule 16's "good cause" standard to file an amended pleading after the Scheduling Order's deadline.  And also, Uhlig argues, Judge Birzer erred by concluding that CoreLogic's request for leave to amend wasn't futile, and thus, permitting amendment under Rule 15.  The court addresses each one of Judge Birzer's conclusions in the subsections below.

### 1. "Good Cause" Standard Under Rule 16

As already explained, Judge Birzer applied Fed. R. Civ. P. 16—the rule that governs modifying a Scheduling Order—because CoreLogic's motion seeking leave to file an amended pleading came more than six months after the Scheduling Order's deadline had passed.  Under Fed. R. Civ. P. 16(b)(4), a "schedule may be modified only for good cause and with the judge's consent."  The advisory committee notes to this Rule provide:  "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."  Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment; *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) ("In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." (citation and internal quotation marks omitted)).  "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed."  *Gorsuch*, 771 F.3d at 1240.  Ultimately, the decision whether to modify a scheduling order is within the court's sound discretion.  *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011).

Applying this standard, Judge Birzer concluded that CoreLogic had established good cause because, during discovery, Uhlig had produced the Questionnaires—ones that included the Grant of Authority—"which expressly authorized [CoreLogic] to distribute data they obtained from [Uhlig] to third parties[.]"  Doc. 99 at 6.  Judge Birzer found these documents were "relevant to [CoreLogic's] proposed breach of contract counterclaim."  *Id.* at 6–7.  And Judge Birzer determined that the Questionnaires were "newly discovered information" that "was not readily available because [CoreLogic] could not extract the documents from [its] database without expending hundreds of [workers'] hours."  *Id.* at 7.

But as Uhlig asserts, the Questionnaires were "developed *by CoreLogic*," and—as CoreLogic conceded—it always has had possession of the 9,000 Questionnaires that allegedly support CoreLogic's breach of contract counterclaim.  Doc 113 at 2–3.  Indeed, the Questionnaires bear CoreLogic's name at the top of the first page and include a designation in the footer stating that the form is copyrighted by CoreLogic.  *See* Doc. 24 at 58–62, 95–99, 105–09, 120–24.  Also, back in December 2021, Uhlig submitted several of these Questionnaires as exhibits to its Response opposing CoreLogic's Motion for Temporary Restraining Order and Preliminary Injunction.  *See id.*  Thus, at the very least, CoreLogic knew about some of these Questionnaires almost a year before it moved for leave to file its Second Amended Counterclaim on November 30, 2022.  So, CoreLogic's assertion that these Questionnaires are "newly discovered evidence"—documents that CoreLogic created and that Uhlig submitted as evidence in December 2021—appears inconsistent with the record.  *See* Doc. 110 at 5 (asserting that CoreLogic's Second Amended Counterclaim "alleges . . . new facts based on information recently discovered"); *see also* Doc. 107 at 13 (alleging that "CoreLogic submitted evidence with its Motion that the additional facts CoreLogic alleges constitutes 'newly discovered information' because it was not 'readily available because [CoreLogic] could not extract the documents from their database without expending hundreds of [workers'] hours'" (quoting Doc. 99 at 7)).

CoreLogic also argues that Judge Birzer "considered and was persuaded by the fact[ ]" that the court didn't rule Uhlig's Motion to Dismiss CoreLogic's First Amended Counterclaim until September 30, 2022 (Doc. 81)—about four months after the deadline for amending pleadings had expired.  Doc. 107 at 12.  CoreLogic argues that it wasn't required to "prophylactically move to amend before a ruling on the Motion to Dismiss."  *Id.* at 14.  But this argument ignores that CoreLogic's new breach of contract theory is premised on an entirely

different set of factual allegations and omits significant factual allegations that CoreLogic asserted in its First Amended Counterclaim (Doc. 67)—ones which made CoreLogic's breach of contract claims implausible. *See, e.g.*, Doc. 81 at 36 n.10 (concluding that "the Counterclaim alleges no facts capable of plausibly supporting a finding that Uhlig ratified" a purported 2015 agreement because "the Counterclaim describes communications between the parties where Uhlig seemed to have no knowledge of the Agreement and then declined CoreLogic's offers to memorialize an agreement outside the Terms of Use Agreement" and where "Uhlig explicitly informed CoreLogic that the Terms of Use Agreement governed the parties' relationship and wasn't subject to deviation by any other agreement outside of those Terms" (citing Doc. 67 at 17 (Countercl. ¶ 29))).

What CoreLogic did here looks like gamesmanship. It pleaded one set of facts to support an entirely different breach of contract claim. The court then devoted time and resources evaluating and deciding that breach of contract claim—as well as seven other counterclaims asserted by the First Amended Counterclaim—and concluded (in a 47-page Order) that none of the claims asserted in the First Amended Counterclaim stated a plausible claim for relief. *See generally* Doc. 81. Once CoreLogic's first breach of contract theory failed, it waited two more months and then sought leave to assert a brand new breach of contract claim premised on an entirely new set of facts involving the Questionnaires. And to top it off, Uhlig had provided some of the "new" facts to CoreLogic almost a year earlier when the parties briefed the Motion for Temporary Restraining Order and Preliminary Injunction.

This gamesmanship aside, the court, on this record, nevertheless can't conclude definitively that Judge Birzer committed clear error by finding that CoreLogic had demonstrated good cause. She found that the facts showed that CoreLogic had established that the 9,000

Questionnaires were "newly discovered information" based on CoreLogic's representation that it could not "extract the documents from [its] database without expending hundreds of [workers'] hours." Doc. 99 at 7. On a Rule 72 motion asserting that a magistrate judge's order was clearly erroneous, the court doesn't conduct a de novo review of the factual findings. *Ocelot Oil Corp.*, 847 F.2d at 1464. Instead, the court must affirm the magistrate judge's order unless a review of the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted). The court doesn't reach that point here because it can't find that Judge Birzer committed a mistake.

While the court might have reached a different conclusion if presented with CoreLogic's "good cause" argument in the first instance, the court doesn't decide here that Judge Birzer's "good cause" finding was clearly erroneous. Thus, the court concludes that Judge Birzer acted within her discretion when she decided that CoreLogic had satisfied Rule 16's "good cause" standard for amending the Scheduling Order to permit CoreLogic to file an amended pleading after the Scheduling Order's deadline had expired. *See Kan. Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 01-2236-JWL, 2002 WL 922123, at *2 (D. Kan. Apr. 18, 2002) ("While this court might have resolved plaintiff's motion for leave differently than [the magistrate judge] resolved it, the court cannot conclude that [the magistrate judge's] decision was clearly erroneous or contrary to law. Simply put, the magistrate judge acted within his discretion and within the bounds of Tenth Circuit precedent in denying the motion for leave."); *see also United States v. Williams Pipe Line Co.*, No. 89-1393-T, 1991 WL 105245, at *2 (D. Kan. May 23, 1991) ("However differently this court might have viewed plaintiff's original motion to amend, the court cannot characterize the magistrate's finding of undue delay as clearly erroneous. The magistrate acted within his discretion in denying the motion to amend."); *In re Payment Card*

*Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2021 WL 4775553, at *3 (E.D.N.Y. Jan. 14, 2021) ("'[T]he magistrate judge's findings should not be rejected merely because the court would have decided the matter differently.'" (quoting *Pall Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008))).

## 2. Rule 15

After concluding that CoreLogic established good cause to modify the Scheduling Order and extend the deadline for seeking leave to amend the pleadings under Fed. R. Civ. P. 16, Judge Birzer applied Fed. R. Civ. P. 15 to decide whether to grant CoreLogic leave to amend. Doc. 99 at 7–18. Judge Birzer concluded that CoreLogic's proposed amended counterclaims weren't futile. *Id.* at 10–18. And so, she granted CoreLogic's request for leave to file its Second Amended Counterclaim. *Id.* at 18.

Uhlig asserts that Judge Birzer erred by finding that each of CoreLogic's three claims asserted in the Second Amended Counterclaim weren't futile. Uhlig contends that none of the three claims, on close inspection, assert plausible claims for relief, and thus, they can't survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. The court addresses the three claims, below. But first, the court begins with the governing legal standard for granting leave to amend the pleadings.

### a. Legal Standard

Rule 15(a)(2) provides that the court "should freely give leave" to amend the pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(1). However, the court may deny leave to amend on the grounds of undue delay, bad faith or dilatory motive by the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the proposed amendment. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204

(10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) (further citations omitted)). The decision to grant leave to amend the pleadings under Fed. R. Civ. P. 15(a) is within the district court's sound discretion. *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971)). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason[.]" *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citations omitted).

Here, Uhlig argues that Judge Birzer erred when she declined to conclude that CoreLogic's proposed Second Amended Counterclaim was futile because she determined that its three counterclaims survive dismissal under Fed. R. Civ. P. 12(b)(6). Judge Birzer correctly applied the standard governing motions to dismiss under Rule 12(b)(6) to determine whether CoreLogic's proposed amendment here is futile. Doc. 99 at 7–8; *see also Little v. Portfolio Recovery Assoc., LLC*, 548 F. App'x 514, 515 (10th Cir. 2013) (applying Rule 12(b)(6) standard to determine whether the proposed amendment was subject to dismissal, and thus, futile).

Rule 12(b)(6) allows an opposing party to seek dismissal of a pleading that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal

conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  And

while this pleading standard doesn't require "'detailed factual allegations,'" it demands more

than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

a cause of action'" which, as the Supreme Court explained, "'will not do.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 555).

### b.   Analysis

As discussed, Judge Birzer permitted CoreLogic to file a Second Amended Counterclaim

asserting three claims:  (1) breach of contract, (2) breach of the covenant of good faith and fair

dealing, and (3) tortious interference.  The court decides whether Judge Birzer erred in her

futility analysis of the three proposed counterclaims, in turn, below.

### i.   Breach of Contract

The parties here agree.  Delaware law applies to CoreLogic's breach of contract claim.[5]

In Delaware, the elements of a breach of contract claim are:  (1) "the existence of the contract,

whether express or implied;" (2) "the breach of an obligation imposed by that contract;" and (3)

---

[5]      Uhlig previously argued that Delaware law governs the state law claims CoreLogic had asserted
in its First Amended Counterclaim.  *See* Doc. 36 at 29–30 n.3 (Pl.'s Mem. of Law in Supp. of Mot. to
Dismiss Am. Countercl.).  It did so because Uhlig's Terms of Use Agreement and other customer
agreements require that the contracts "and any non-contractual disputes/claims arising out of or in
connection with" the contracts "are subject to the laws of the state of Delaware, United States of America,
without regard to conflicts of laws principles."  Doc. 24 at 29 (Terms of Use Agreement); *see also id.* at
46 (Information Upload Agreement) (same); *id.* at 56 (Order Submission Agreement) (same).  On this
motion, CoreLogic agrees that Delaware law applies to the claims in its Counterclaim.  *See* Doc. 110 at
8–10.

Also, as the court explained in an earlier Order, applying Delaware law here also is appropriate
under Kansas choice of law rules.  A federal court exercising supplemental jurisdiction over state law
claims in a federal question lawsuit applies the substantive law—including choice of law rules—of the
forum state.  *BancOklahoma Mortg. Corp. v. Cap. Title Co., Inc.*, 194 F.3d 1089, 1104 (10th Cir. 1999)
(citing *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996)).  In Kansas, when the
parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts
generally apply the law chosen by the parties to control their agreement.  *Brenner v. Oppenheimer & Co.
Inc.*, 44 P.3d 364, 375 (Kan. 2002).  Thus, because the parties' contracts here contain Delaware choice of
law provisions, the court applies Delaware law to CoreLogic's state law claims.

"the resultant damage to the plaintiff."  *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citations omitted).

CoreLogic premises its breach of contract claim on "an agreement of indefinite term pursuant to Uhlig's Terms of Use as modified by the parties' years-long course of dealing and evidenced by the over 9,000 signed Questionnaires that included the Grant of Authority[.]"  Doc. 100 at 17 (Second Am. Countercl. ¶ 28).  As CoreLogic alleges, the Grant of Authority provides: "'The undersigned [Uhlig agent] certifies that to the best of their knowledge and belief, the information contained herein and in any addendum or attachments is true and correct and authorizes CoreLogic to utilize the information and provide it to mortgage lenders and other third parties without restriction.'"  *Id.* at 14–15 (Second Am. Countercl. ¶ 18) (quoting Grant of Authority) (emphasis omitted).

Uhlig argues that the court should grant its Motion to Dismiss CoreLogic's breach of contract claim for five reasons.  The court addresses all five, below.

*First*, Uhlig asserts, CoreLogic can't allege a plausible breach of contract claim based on a purported "course of dealing" because the Grant of Authority conflicts with the express language of the Terms of Use prohibiting commercial use of Uhlig's data.  To support this argument, Uhlig relies on allegations CoreLogic asserted in its First Amended Counterclaim.  Specifically, CoreLogic previously alleged that it had acknowledged in 2018 that its ordering practices were *not* consistent with Uhlig's Terms of Use.  Also, CoreLogic alleged that it asked Uhlig for a modification of the Terms of Use, and Uhlig refused.  Based on these allegations, Uhlig asserts, CoreLogic can't assert a claim based on an alleged "course of dealing" or an alleged modification to the Terms of Use (through the Questionnaires and the Grant of Authority) because CoreLogic previously alleged that Uhlig never agreed to a modification of its

Terms of Use.  There's just one problem with Uhlig's argument.  While CoreLogic's earlier

pleading alleged facts about its 2018 acknowledgment that it was violating the Terms of Use and

CoreLogic's refusal to permit a modification of the Terms of Use, these allegations are

noticeably absent from CoreLogic's Second Amended Counterclaim.

But, Uhlig asserts, the allegations from CoreLogic's abandoned pleading are admissions

that CoreLogic can't avoid to make a breach of contract claim plausible under a different theory.

Uhlig correctly asserts that "the abandoned pleadings doctrine" provides that "earlier abandoned

pleadings are admissible evidence as admissions[.]"  *Haynes v. Manning*, 717 F. Supp. 730, 733

(D. Kan. 1989), *aff'd in part, rev'd in part on other grounds*, 917 F.2d 450 (10th Cir. 1990)

(citations omitted); *see also LWT, Inc. v. Childers*, 19 F.3d 539, 542 (10th Cir. 1994) ("The fact

that plaintiff later abandoned that defense in the South Carolina litigation does not affect the

admissibility of those pleadings as evidence in this action."); *Doss v. Apache Powder Co.*, 430

F.2d 1317, 1323 (5th Cir. 1970) ("Abandoned pleadings . . . are properly admissible as ordinary

declarations or admissions against interest[.]" (citation and internal quotation marks omitted));

*Petrone v. Werner Enters., Inc.*, Nos. 8:11CV401, 8:12CV307, 2017 WL 1968267, at *4 (D.

Neb. May 11, 2017) ("Statements in abandoned pleadings do not constitute binding judicial

admissions; however, these statements are admissible evidence that can be weighed like any

other admission against interest." (citation omitted)); *Johnson v. Goldstein*, 864 F. Supp. 490,

493 (E.D. Pa. 1994) ("When an abandoned pleading is offered, it is admissible as an admission

of a party-opponent under Federal Rule of Evidence 801(d).").  But Uhlig's request that that

court treat certain factual allegations from CoreLogic's abandoned pleading as admissions poses

an evidentiary issue—not an issue the court can decide on a motion to dismiss.  Uhlig doesn't

cite any cases holding that allegations from an abandoned pleading bind a party on a motion to

dismiss a later iteration of the pleading.  And the court's own research hasn't revealed any cases applying such a rule.

Instead, the court must take as true the facts as CoreLogic alleges them in the pleading at issue on the current motion.  And the court must construe those facts in CoreLogic's favor to determine whether CoreLogic's Second Amended Counterclaim states a plausible breach of contract claim.  *See Doe*, 970 F.3d at 1304 (explaining that when the court decides whether a pleading alleges a plausible claim sufficient to survive a Rule 12(b)(6) motion, it "accept[s] as true all well-pleaded factual allegations in the [pleading] and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)).

Faithful to that standard here, the court observes that CoreLogic's Second Amended Counterclaim conspicuously omits certain facts that made implausible the earlier breach of contract claim premised on an alleged "course of dealing"—as the court held in its previous Order.  *See* Doc. 81 at 36 n.10.  Instead, CoreLogic now alleges the parties entered "an agreement of indefinite term pursuant to Uhlig's Terms of Use as modified by the parties' years-long course of dealing and evidenced by the over 9,000 signed Questionnaires that included the Grant of Authority[.]"  Doc. 100 at 17 (Second Am. Countercl. ¶ 28).  The Delaware Supreme Court has recognized that parties to a contract "may, by their conduct, substitute a new oral contract without a formal abrogation of the written agreement[,]" even when the contract contains an integration clause that "prohibit[s] . . . any change except by written bilateral agreement."  *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972).  "The prohibition against amendment except by written change may be waived or modified in the same way in which any other provision of a written agreement may be waived or

modified, including a change in the provisions of the written agreement by [the] course of conduct of the parties." *Id.* (citations omitted).

Based on the new factual allegations in the Second Amended Counterclaim asserting that the parties agreed to modify the Terms of Use Agreement—and the significant omission of other factual allegations that contradict an agreed "years-long course of dealing" or an agreed modification of the Terms of Use—the court concludes that the Second Amended Counterclaim states a plausible claim for breach of contract. And thus, CoreLogic's new breach of contract claim—as proposed in the Second Amended Counterclaim—isn't futile. So, Judge Birzer didn't err by granting CoreLogic leave to amend.

*Second*, Uhlig asserts that CoreLogic can't rely on the Questionnaire's Grant of Authority because it was "an impermissible alteration" by CoreLogic "to Uhlig's Terms of Service and is therefore invalid under the Terms of Service for that specific reason." Doc. 106 at 11. To support this argument, Uhlig relies on several of its Agreements containing the "Attempted Alteration" clause. Doc. 24 at 28 (Terms of Use Agreement); *see also id.* at 46 (Information Upload Agreement); *id.* at 55–56 (Order Submission Agreement). Each of the Agreements includes a clause prohibiting any "attempt . . . to alter, modify, waive, supplement or append additional terms" to the parties' Agreements. *Id.* at 28 (Terms of Use Agreement); *see also id.* at 46 (Information Upload Agreement); *id.* at 55–56 (Order Submission Agreement). Also, the clause provides that any alteration is "ineffective and void for all purposes." *Id.* at 28 (Terms of Use Agreement); *see also id.* at 46 (Information Upload Agreement); *id.* at 55–56 (Order Submission Agreement).

Although Uhlig asserts that the Grant of Authority was an "impermissible alteration" or a "unilateral[ ] inserting" of contract language on CoreLogic's part that the "Attempted Alteration"

clause prohibits, Doc. 106 at 11–12, these characterizations of CoreLogic's actions aren't contained anywhere in the pleadings.  Instead, taking CoreLogic's factual allegations as true, CoreLogic alleges that Uhlig agreed to modify the Terms of Use by agreeing to the Grant of Authority.  Specifically, CoreLogic alleges that Uhlig "knew of and approved" the Grant of Authority.  Doc. 100 at 15 (Second Am. Countercl. ¶ 19).  Also, it alleges "Uhlig's management-level employees" including "Uhlig's 'Customer Service Manager,'" approved the Grant of Authority.  *Id.* (Second Am. Countercl. ¶ 20).  Uhlig argues these allegations are conclusory and "fail to set forth any detail" about the "person, time, or manner of assent to this alleged contract modification."  Doc. 114 at 4.  The court disagrees.  The Questionnaires themselves are dated, and they bear the signature of a Uhlig representative.  *See* Doc. 24 at 62, 99, 109, 124.  Thus, the Second Amended Counterclaim and the documents that it incorporates by reference provide sufficient facts to support CoreLogic's new allegations that Uhlig knew about and consented to the Questionnaires containing the Grant of Authority.

Also, CoreLogic argues, Delaware law permits the parties to modify the language of the "Attempted Alteration" clause by their agreement to the Grant of Authority and their course of dealing that purportedly allowed CoreLogic to use Uhlig's data for commercial purposes. CoreLogic's allegations—taken as true and viewed in its favor—support a plausible breach of contract claim based on a purported modification of the Terms of Use—including its "Attempted Alteration" clause—and the parties' course of dealing.  So, Judge Birzer didn't err when she concluded that Uhlig's proposed Second Amended Counterclaim stated a plausible breach of contract claim.  And thus, granting leave to amend the pleadings wasn't futile.

*Third*, Uhlig argues that CoreLogic can't assert a plausible breach of contract claim based on the Questionnaires because each Questionnaire was specific to information contained on that

form and didn't apply to future orders.  Uhlig asserts that the Questionnaires only applied to each individual order—as evidenced by the Grant of Authority's limitation to the "information contained herein[.]"  *See, e.g.*, Doc. 24 at 62.  But this argument ignores CoreLogic's new "course of dealing" allegations.  Viewing CoreLogic's allegations as true and in its favor, CoreLogic argues that each of the signed Questionnaires was part of a "years-long course of dealing" that involved Uhlig agreeing to the Grant of Authority in more than 9,000 Questionnaires.  Doc. 100 at 17 (Second Am. Countercl. ¶ 28).  CoreLogic asserts that these allegations support its claim that "CoreLogic and Uhlig entered into an agreement of an indefinite term" that modified Uhlig's Terms of Use and permitted CoreLogic to use Uhlig's data for commercial purposes.  *Id.*  No matter how these allegations conflict with CoreLogic's earlier allegations—specifically about the 2018 correspondence between the parties where Uhlig told CoreLogic that it was violating its Terms of Use—the court must decide the current motion based on the allegations as CoreLogic pleads them now in its Second Amended Counterclaim.  Thus, the court concludes that CoreLogic's newly-pleaded breach of contract claim states a plausible claim.  And Judge Birzer didn't err in the futility analysis when she permitted CoreLogic to amend its Counterclaim to assert this new breach of contract claim.

*Fourth*, Uhlig asserts that CoreLogic's breach of contract claim fails to state a claim because the Terms of Use Agreement superseded the Questionnaires (and the Grant of Authority included within it) each time CoreLogic placed a new order with Uhlig.  This argument again ignores CoreLogic's new allegations that the parties entered an agreement "of indefinite term" to modify Uhlig's Terms of Use Agreement—a modification that is manifested by the "years-long course of dealing" and the 9,000 Questionnaires.  Doc. 100 at 17 (Second Am. Countercl. ¶ 28).  Whether CoreLogic actually can prove these allegations once this case reaches the dispositive

stage remains an open question.  But, for now, the revised allegations in the Second Amended Counterclaim assert enough facts to state a plausible breach of contract claim.  Judge Birzer didn't err in her futility analysis or by granting CoreLogic leave to amend.

*Fifth*, and *last*, Uhlig argues that CoreLogic can't allege a plausible breach of contract claim because the facts—as CoreLogic previously alleged them—fail to support a finding or inference that Uhlig terminated the parties' contract with unreasonable notice.  In Delaware, "where the parties to a contract express no period for its duration and none can be implied from the nature of the contract or from the circumstances surrounding them, the only reasonable intention that can be imputed to the parties is that the contract may be terminated by either on giving reasonable notice of his intention to the other."  *Del. Fin. Mgmt. Corp. v. Vickers*, No. Civ. A. 96C-10-032, 1999 WL 458633, at *6 (Del. Super. Ct. June 9, 1999) (citation omitted). Uhlig asserts that—even if CoreLogic has alleged that the parties had a contract—the facts fail to support a finding or inference that Uhlig provided unreasonable notice that it was terminating the parties' purported contract.  But Uhlig's argument suffers from a problem the court already has discussed:  It relies on factual allegations from CoreLogic's abandoned pleading.

As Uhlig asserts, this court "in its Original Order of Dismissal exhaustively analyzed the allegations and referenced documentation, noting that Uhlig had told CoreLogic in 2018 and then again in June of 2021 that CoreLogic's actions in reselling Uhlig's information for commercial purposes violated Uhlig's Terms of Service."  Doc. 106 at 17 (citing Doc. 81 at 36–39).  And, based on those facts, the court concluded that "CoreLogic could not plead facts showing that Uhlig's termination of CoreLogic's access to Uhlig's websites in November 2021 was unreasonable."  *Id.* at 18 (citing Doc. 81 at 37).  That's true.  But the court based this analysis on the facts alleged in CoreLogic's First Amended Counterclaim—not the one at issue now.  Doc.

81 at 37 ("Here, the Counterclaim's factual assertions effectively concede that Uhlig notified CoreLogic that it was terminating the 2015 Agreement.  And, it asserts no factual basis from which a reasonable factfinder could find or infer that this notice was unreasonable.").  CoreLogic now has omitted those facts from its Second Amended Counterclaim.  Instead, the Second Amended Counterclaim now alleges that in November 2021, "Uhlig repudiated the parties' agreement and blocked CoreLogic's access to Uhlig's websites 'effective immediately'" and did so "without reasonable notice[.]"  Doc. 100 at 17, 18 (Second Am. Countercl. ¶¶ 25, 34).

Uhlig again argues that CoreLogic's previous factual allegations are admissions that can't save CoreLogic's repleaded breach of contract claim.  That may prove true.  But that's an evidentiary contest that the court can't consider to decide this motion to dismiss.  Instead, viewing the Second Amended Counterclaim's allegations as true and taking them plus their reasonable inferences in CoreLogic's favor, it alleges that Uhlig didn't provide reasonable notice before terminating the parties' contract.  Thus, CoreLogic's breach of contract claim as pleaded in the Second Amended Counterclaim states a plausible claim.  And Judge Birzer didn't err in her futility analysis.

For all these reasons, the court affirms Judge Birzer's Order granting CoreLogic leave to file its Second Amended Counterclaim.  She correctly determined that the new breach of contract claim—as pleaded in the Second Amended Counterclaim—states a plausible claim for relief.  Thus, it wasn't futile to allow CoreLogic leave to make that amendment.  But still, the court shares the same frustration that Uhlig expresses in its current motions.  The court already addressed CoreLogic's initial breach of contract claim and dismissed it because it didn't state a plausible claim.  It doesn't seem fair that CoreLogic gets a second bite at the apple to plead this claim based on an entirely new theory and by abandoning earlier allegations that made

implausible a breach of contract claim.  But Rule 15 requires courts to grant leave "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(1).  CoreLogic's tactics here raise real questions about the justice of its procedural course.  But nonetheless, CoreLogic's new breach of contract claim—as pleaded in the revised allegations—states a plausible claim for relief when taking CoreLogic's factual assertions as true and viewing them in its favor.  Thus, it wasn't futile to grant leave to amend.  And Judge Birzer didn't commit clear err when she allowed CoreLogic to file its Second Amended Counterclaim.

### ii.  Breach of the Covenant of Good Faith and Fair Dealing

CoreLogic's Second Amended Counterclaim asserts a second claim for breach of the covenant of good faith and faith dealing claim.  In Delaware, the implied covenant of good faith and fair dealing "attaches to every contract," and it "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."  *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (citation and internal quotation marks omitted).  Uhlig asserts that Judge Birzer erred by allowing CoreLogic leave to amend to assert a breach of the covenant of good faith and fair dealing claim because CoreLogic failed to allege the existence of a valid contract "that allowed CoreLogic the ongoing right to access Uhlig's websites and to resell Uhlig's information for commercial purposes."  Doc. 106 at 19.  The court disagrees.

As discussed above, the court concludes that the Second Amended Counterclaim—with its revised allegations—pleads a plausible breach of contract claim based on an alleged "agreement of indefinite term pursuant to Uhlig's Terms of Use as modified by the parties' years-long course of dealing and evidenced by the over 9,000 signed Questionnaires that included the Grant of Authority (the 'Agreement')."  Doc. 100 at 17 (Second Am. Countercl. ¶

28

28).  As a consequence, CoreLogic alleges a plausible breach of the covenant of good faith and fair dealing claim by alleging that Uhlig "breached the implied covenant of good faith and fair dealing" by "(a) repudiating the Agreement and asserting disingenuously that CoreLogic breached the Terms of Use by using Uhlig's data for commercial purposes without Uhlig's knowledge or consent, and (b) unilaterally terminating the Agreement without reasonable notice and barring CoreLogic from accessing data exclusively controlled by Uhlig."  *Id.* at 18 (Second Am. Countercl. ¶ 34).  Judge Birzer's futility analysis of this claim didn't err and, thus, she didn't err by granting CoreLogic leave to amend.

### iii.   Tortious Interference

The Second Amended Counterclaim asserts a third claim for tortious interference with contractual relations.  CoreLogic asserts that "Uhlig knowingly, intentionally, improperly, and without privilege interfered with the performance of CoreLogic's contracts with third-parties by unilaterally terminating the Agreement without reasonable notice and barring CoreLogic from accessing Uhlig's data, with the purpose of disrupting CoreLogic's third-party relationships in order to take such customers for its own."  Doc. 100 at 19 (Second Am. Countercl. ¶ 40).  A tortious interference with contractual relations claim in Delaware requires a plaintiff to plead facts capable of supporting the following elements:  "(1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury."  *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (citation and internal quotation marks omitted).  Uhlig argues that CoreLogic's tortious interference claim fails to state a plausible claim because CoreLogic hasn't alleged that Uhlig acted without justification.  Uhlig argues that—without the existence of a valid contract permitting CoreLogic to use Uhlig's data for commercial purposes—no reasonable factfinder

could find or infer that Uhlig acted without justification when it barred CoreLogic from accessing its data through Uhlig's websites.

But, as discussed at length, the court has concluded that the Second Amended Counterclaim pleads the existence of a valid agreement between Uhlig and CoreLogic that allowed CoreLogic to use Uhlig's data for commercial purposes.  Taking the allegations as true and viewing them in CoreLogic's favor, the Second Amended Counterclaim alleges that Uhlig acted without justification "by unilaterally terminating the Agreement without reasonable notice and barring CoreLogic from accessing Uhlig's data, with the purpose of disrupting CoreLogic's third-party relationships in order to take such customers for its own."  Doc. 100 at 19 (Second Am. Countercl. ¶ 40).  These allegations suffice to state a plausible tortious interference claim. Thus, Judge Birzer didn't err by granting CoreLogic leave to amend the Second Amended Counterclaim to assert a tortious inference claim.

### iv.   Conclusion

For reasons explained, the court concludes that Judge Birzer didn't err by granting CoreLogic leave to file a Second Amended Counterclaim.  Each of the three claims asserted in the Second Amended Counterclaim—(1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) tortious interference—states a plausible claim for relief.  And thus, granting leave to amend wasn't futile.  The court thus affirms Judge Birzer's Order.

### III.   "Motion To Dismiss Second Amended Counterclaims" (Doc. 105)

In addition to objecting to Judge Birzer's Order granting leave to amend, Uhlig has filed a "Motion to Dismiss the Second Amended Counterclaims."  Doc. 105.  It seeks dismissal of the three counterclaims under Fed. R. Civ. P. 12(b)(6).  As explained in detail above, the court concludes that each of the three claims in the Second Amended Counterclaim states a plausible

claim for relief based on the new factual allegations asserted in the Second Amended Counterclaim.  The three counterclaims survive dismissal under Fed. R. Civ. P. 12(b)(6), and the court thus denies Uhlig's Motion to Dismiss (Doc. 105).

### IV.    Conclusion

For reasons explained by this Order, the court denies Uhlig's Motion to Review Plaintiff's Objections to Magistrate Judge Birzer's February 6, 2023 Order (Doc. 103).  And it denies Uhlig's "Motion to Dismiss Second Amended Counterclaims" (Doc. 105).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Uhlig LLC's Motion to Review Plaintiff's Objections to Magistrate Judge Birzer's February 6, 2023 Order (Doc. 103) is denied and plaintiff's objections are overruled.

**IT IS FURTHER ORDERED THAT** plaintiff Uhlig LLC's "Motion to Dismiss Second Amended Counterclaims" (Doc. 105) is denied.

**IT IS SO ORDERED.**

**Dated this 28th day of June, 2023, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**