## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UHLIG LLC, d/b/a Condocerts and )
d/b/a Welcomelink )
                    )
      Plaintiff/Counter-Defendant, )
                    )
v.                       )       Case No. 21-2543-DDC-GEB
CORELOGIC, INC. and )
CORELOGIC SOLUTIONS, LLC, )
                    )
      Defendants/Counter-Claimants. )
                      )

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on Plaintiff/Counter-Defendant Uhlig, LLC's, ("Uhlig,") Motion to Divide Costs of Production for Fully Responding to Defendants-Counterclaim Plaintiffs' Fifth Set of Requests for Production of Documents, No. 139, ("Motion.") **(ECF No. 131.)** Defendants/Counter-Claimants ("CoreLogic") filed their response in opposition to Uhlig's Motion **(ECF No. 132),** and, on May 23, 2023, Uhlig filed their reply. **(ECF No. 136**.)

On June 6, 2023, the Court convened the parties for oral argument. **(ECF No. 143).** Subsequent to the hearing, the Court ordered the parties to confer and retain a neutral third-party to provide the parties and the Court with a cost estimate for retrieving the ESI responsive to CoreLogic's request for production number 139. **(ECF No. 143).** A copy of the estimate has been received by all parties, this matter is fully briefed, and the Court is now prepared to rule. For the reasons set forth below, the Court **DENIES** Uhlig's Motion.

## I.   Background[1]

The factual background of this case has been well-established in prior orders of the Court.[2]  To briefly summarize, Uhlig is a national provider of community information to registered users who seek such information via its websites.  Uhlig alleges its products and services are governed by its customer agreements, ("user agreements") and are not offered outside those terms.  Uhlig does business under the brands CondoCerts™ and WelcomeLink®.

CoreLogic is a global property information, analytics, and data-enabled services provider. One of CoreLogic's products was CondoSafe, a national service for lenders that provided condominium-project data and analytics and helped lenders determine whether individual condominium units met underwriting guidelines.  CoreLogic previously purchased data regarding condominium units from Uhlig and, in turn, provided that data to its clients.

In November 2021, Uhlig terminated CoreLogic's access to its services by barring it from accessing its websites and filed this lawsuit including eight separate claims against CoreLogic. As anticipated, CoreLogic responded to Uhlig's lawsuit by filing an Answer and Counterclaims.[3]   On January 10, 2022, CoreLogic filed an answer with amended counterclaims.[4]

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint and Answer. This background information should not be construed as judicial findings or factual determinations.
[2] ECF Nos. 60, 81, 99.
[3] ECF No. 8.
[4] ECF No. 29.

Uhlig filed a motion to dismiss CoreLogic's amended counterclaims on January 31, 2022.[5] On September 30, 2022, the District Judge entered his memorandum and order granting Uhlig's motion and dismissed all eight of CoreLogic's amended counterclaims.

As a result, CoreLogic filed a motion to modify the scheduling order and for leave to file an answer with second amended counterclaims.[6] On February 7, 2023, the Court granted CoreLogic's motion,[7] and CoreLogic filed its answer with second amended counterclaims on February 7, 2023.[8]

The parties have been engaging in discovery throughout the course of this matter; however, this case involves significant amounts of data as well as thousands of pages of documents.[9] The Court has intervened on several occasions regarding various discovery disputes between the parties,[10] while, in other instances, the parties have resolved their discovery disputes through the meet and confer process.[11] The parties are now before the Court regarding Uhlig's request that CoreLogic share in the costs of producing documents and/or ESI responsive to CoreLogic's request for production number 139.  After the issue was fully briefed and the Court heard oral argument, the parties agreed on a neutral third-party who provided counsel and the Court with a cost estimate to rebuild a decommissioned database in order to access and produce the discovery in dispute. The estimate indicates

---

[5] ECF No. 35.
[6] ECF No. 89.
[7] ECF No. 89.
[8] ECF No. 100.
[9] ECF No. 108.
[10] ECF Nos. 60, 75, 112, 123.
[11] ECF No. 108.

restoration of the Uhlig database will cost $25,000 to $40,000.  However, the estimate does not include the cost of producing the data once the database is restored.[12]

## II.   Parties' Respective Positions

### 1.   <u>Uhlig's Position</u>[13]

Uhlig asserts it must recreate a database previously decommissioned in order to access data fully responsive to CoreLogic's request for production.  Uhlig further asserts this will cost, at a minimum, $250,000 or, at most, up to $500,000. Uhlig objected to this request for production as overburdensome and filed the instant Motion requesting CoreLogic bear at least half of the costs incurred in connection with retrieving and producing the information from the decommissioned database.

### 2.   <u>CoreLogic's Position</u>[14]

CoreLogic argues the cost of recreating the database and producing the requested documents is substantially less than what Uhlig asserts and contends the costs incurred by Uhlig in producing the documents responsive to request for production number 139 would be less than $25,000. CoreLogic asks the Court to deny Uhlig's Motion or, in the alternative, get an estimate due to the vast difference in the parties' arguments regarding cost.

---

[12] The estimate indicates the cost will be determined by the company's hourly rates and approved by the parties before any work is to begin.
[13] ECF No. 131.
[14] ECF No. 132.

## III.     Compliance with D. Kan. Rules 37.1 and 37.2

Pursuant to D. Kan. Rules 37.1 and 37.2, the parties must satisfy the duty to confer or make a reasonable effort to confer and arrange a telephone conference with the judge prior to filing any disputed discovery-related motion.  The parties conferred via telephone on April 12, 2023, and participated in a discovery conference with the Court on May 3, 2023, regarding this issue.[15] Given the prior conferences held on this topic, the Court finds the parties have sufficiently complied with D. Kan. Rules 37.1 and 37.2.

## IV.     Legal Standards

In general, "the presumption is that the responding party must bear the expense of complying with discovery requests."[16]  However, pursuant to Fed. R. Civ. P. 26(c), "courts have broad discretion to protect a responding party from undue burden by conditioning discovery on the requesting party's payment of the costs of discovery or by restricting discovery."[17] Due to the presumption that the responding party is responsible for the costs of answering discovery requests, "it bears the burden to establish that the discovery expense would be excessive and thus justify cost-shifting."[18] The Court considers the factors set forth in Fed. R. Civ. P. 26(b)(1) to determine whether to impose discovery costs on the requesting party.[19] Those factors include: 1) the importance of the issues at stake in

---

[15] ECF Nos. 118, 120.

[16] *Cooper Clinic, P.A. v. Pulse Systems, Inc.*, No. 14-1305-JAR-GLR, 2017 WL 396286, at *6 (D. Kan. Jan. 30, 2017) (citing *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings, LLC*, No. 07-2388-DJW, 2008 WL 3822773, at *7 (D. Kan. Aug. 13, 2008)).

[17] *Id.*

[18] *Cooper* at *6.

[19] *Id.*

the action, 2) the amount in controversy, 3) the parties' relative access to relevant information, 4) the parties' resources, 5) the importance of the discovery in resolving the issues, and 6) whether the burden or expense of the proposed discovery outweighs its likely benefit.[20] The Court will now move to a review of these standards as they apply to the facts of this case.

## V.   Discussion

In this instance, Uhlig seeks to have CoreLogic share in at least one-half the costs of fully responding to request for production number 139. The burden is on Uhlig to establish the discovery requested is excessive in light of the factors set forth in Fed. R. Civ. P. 26(b)(1).

In considering those factors, the Court finds the issues at stake are of utmost importance. Uhlig sets forth eight separate counts as a result of CoreLogic's alleged wrongful acts, and CoreLogic alleges Uhlig's actions ultimately caused the end of its CondoSafe business.[21]

The amount in controversy is unknown at this time.  Despite the Court's initial inquiries at the outset of this case, neither party set forth any claimed damages in their Fed. R. Civ. P. 26(a) initial disclosures, and Uhlig did not address this issue in its Motion. However, upon review of the parties' pleadings, CoreLogic alleges it paid Uhlig over $3 million during their business relationship.[22] With only this information to rely on and the

---

[20] *Id.*
[21] ECF Nos. 63, 100.
[22] ECF No. 100.

understanding that CondoSafe is no longer in business, the Court must reason the damages claimed by CoreLogic are at least $3 million. This also lends to the conclusion that each party has substantial resources to adequately engage in this lawsuit and the discovery that ensues as a result.

The Court previously deemed this discovery relevant, and it is clear Uhlig is the only party that has access to this relevant information.[23] CoreLogic has no other avenue for obtaining the requested documents and/or data.

In its Motion, Uhlig argues the information in the decommissioned database is a "relatively small subset" of information, and CoreLogic will have enough data to determine how the number of orders CoreLogic placed compares to other Uhlig customers without having the material in the decommissioned database.[24] This effectively argues the discovery in dispute is not important to resolving the issues. CoreLogic disagrees and argues the discovery it seeks is significant to resolving the question of whether CoreLogic was a unique or material customer of Uhlig's and is important to resolving whether CoreLogic interfered with Uhlig's business expectancy by selling information to customers who would otherwise purchase from Uhlig.[25] The Court agrees with CoreLogic. If there are names of customers in Uhlig's database (or are absent from the database,) who later terminated the business relationship with Uhlig to do business with CoreLogic, this would

---

[23] ECF No. 123.
[24] ECF No. 131.
[25] ECF No. 132.

likely be significant to Uhlig's claim of tortious interference with a business expectancy and a lack of such customers might be important to CoreLogic's defense of that claim.

Finally, the Court considers whether the burden or expense of the proposed discovery outweighs its likely benefit. Uhlig argues that it does, however, Uhlig vastly inflated the likely costs to produce the requested information, as compared to the ESI professional's cost estimate.[26] The estimate indicates restoration of the database will cost $25,000 to $40,000; Uhlig argued restoration of the database to be between $200,000 and $450,000. Other than the hourly rate of its employees, the estimate from the ESI professional does not give the Court any information regarding the cost of producing the data once the database is restored. It appears Uhlig estimates that cost to be in the range of $50,000, based upon 500 hours of time to review the information in the database for accuracy.[27] However, the Court does not find Uhlig's estimate here reliable, due to the inaccuracy of its estimate for restoring the database. According to Uhlig, this is a "relatively small subset"[28] of information, and the cost of reviewing and producing it will likely be at least partially dictated by Uhlig's willingness to cooperate and work with the IT professionals. The Court is left without reliable information regarding the cost of producing the material once the database is restored, making it impossible to weigh the expense of the proposed discovery against its likely benefit. Based upon the information provided to the Court, there is simply no way to determine the total cost of production.

---

[26] ECF No. 131.
[27] *Id.*
[28] *Id.*

While the total cost of production is unknown, the Court finds the information is a benefit to the parties. Uhlig requested CoreLogic produce documents identifying its customers for each year from 2018-2021, including the revenue received from each customer, which CoreLogic produced.[29]   This is nearly identical to the information CoreLogic seeks from Uhlig in request for production number 139 and what is in dispute here.[30] Uhlig found this information from CoreLogic beneficial to its case and has failed to convince the Court this same data about Uhlig's customers would not be of benefit to CoreLogic's case.  Coupled with the lack of information regarding the total cost to produce the requested documents and/or ESI, Uhlig has not sustained its burden to demonstrate the expense of producing outweighs its likely benefit.

## VI.   Conclusion

For the reasons set forth herein, and with regard to CoreLogic's request for production number 139, the Court finds Uhlig has not sustained its burden to, "establish that the discovery expense would be excessive,"[31] which would then justify shifting the cost of production to CoreLogic.

**IT IS THEREFORE ORDERED** Uhlig's Motion to Divide Costs of Production for Fully Responding to Defendants-Counterclaim Plaintiffs' Fifth Set of Requests for Production of Documents, No. 139 **(ECF No. 131), is DENIED.**

---

[29] ECF No. 132.
[30] ECF No. 131.
[31] *Cooper* at *6.

**IT IS FURTHER ORDERED** that Uhlig produce the documents and/or ESI responsive to CoreLogic's request for production number 139 forthwith, and the Court strongly encourages the parties to be mindful of the October 6, 2023, discovery deadline.[32] The parties are reminded that while they may continue to engage in written discovery at this stage of the case, the Court will not amend the Second Amended Scheduling Order[33] absent a showing of good cause.

**IT IS SO ORDERED.**

Dated:  July 7, 2023, at Wichita, Kansas.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[32] ECF No. 117.
[33] *Id.*