IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UHLIG LLC, d/b/a Condocerts and d/b/a Welcomelink,<br><br>  Plaintiff,<br><br>v.<br><br>CORELOGIC, INC. and<br>CORELOGIC SOLUTIONS, LLC,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 21-2543-DDC-GEB<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants CoreLogic, Inc. and CoreLogic Solutions, LLC's ("CoreLogic") Motion for Reconsideration of the Court's September 11 (ECF 202) and September 12 (ECF 208) Orders or Alternatively to Extend Time, ("Motion.") **(ECF No. 211).** Plaintiff ("Uhlig") filed its response to CoreLogic's Motion on September 15, 2023. **(ECF No. 212)**. The Court considers this matter fully briefed and is now prepared to rule.

For the reasons set forth below, the Court **GRANTS**, in part, and **DENIES**, in part, CoreLogic's Motion. **(ECF No. 211).**

## I.      Background[1]

The factual background and allegations in this case have been well-established in prior orders of the Court.[2] To briefly summarize, Uhlig is a national provider of community information to registered users who seek such information via its websites. Uhlig alleges its products and services are governed by its customer agreements and are not offered outside those terms. CoreLogic is a global property information, analytics, and data-enabled services provider. CoreLogic previously purchased data regarding condominium units from Uhlig and, in turn, provided that data to its clients. In November 2021, Uhlig terminated CoreLogic's access to its services by barring it from accessing its websites and filed this lawsuit including eight separate claims against CoreLogic.

Of more importance is the drawn-out procedural history and discovery phase of the case, which is what the Court will focus on.

Uhlig filed this case on November 22, 2021.[3] On November 29, 2021, just one week later, CoreLogic filed a motion for a temporary restraining order and preliminary injunction, seeking an order from the court prohibiting Uhlig from denying CoreLogic access to its websites that sell condominium community information.[4] While that motion was pending, the undersigned set the case for scheduling.[5]

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint and Answer. This background information should not be construed as judicial findings or factual determinations.
[2] *See* ECF Nos. 22, 81, 99, 156.
[3] ECF No. 1.
[4] ECF No. 5.
[5] ECF No. 18.

2

On December 3, 2021, the Court blatantly denied CoreLogic's motion for a temporary restraining order and left the request for a preliminary injunction pending.[6] Then, on January 13, 2022, CoreLogic requested the scheduling conference be postponed due to a death in the family, and the Court granted the unopposed request.[7] The scheduling conference was moved to February 9, 2022.[8] The Court entered its first scheduling order on February 11, 2022, which set a discovery deadline of December 16, 2022, and a trial setting of October 3, 2023.[9] The first set of written discovery was then sent on February 24, 2022, and, now, over 18 months later, the parties are still mired in written discovery.[10]

Since discovery began, the Court has held at least three hearings in this case over various discovery-related disputes, and during those conferences, the Court has strongly encouraged counsel to finalize written discovery in order to move this case toward trial.[11] The Court has also impressed upon the parties its reluctance to frustrate the docket by extending the current trial date. Due to the extensive and, at times, unreasonable amount of written discovery, as well as the parties' inability to confer and compromise regarding production, this case is on its third amended scheduling order, with fact discovery set to close on September 22, 2023, and a deadline to close all discovery on October 31, 2023.[12]

---

[6] ECF No. 22.
[7] ECF No. 31.
[8] *Id.*
[9] ECF No. 39.
[10] ECF Nos. 44, 219.
[11] ECF Nos. 120, 140, 179; (Telling counsel they should be wrapping up written discovery at the 11/16/22 conference, suggesting 139 requests for production was excessive at the 5/3/23 conference, alerting counsel the court was not inclined to move the discovery deadline at the 6/6/23 conference, and warning counsel the trial date was not likely to be moved at the 7/26/23 conference.)
[12] ECF No. 188.

On July 14, 2023, Uhlig filed a motion to compel regarding its requests for production numbers 93, 95, and 97-100.[13] On July 19, 2023, the Court entered an Order denying that motion due to Uhlig's failure to comply with D. Kan. Rule 37.1(a).[14] In order to bring Uhlig into compliance with the Rule, the Court held a discovery conference on July 26, 2023, regarding the disputed discovery requests.[15] During discussions at the discovery conference, counsel requested the Court give them additional time to confer regarding the disputed discovery because counsel believed, given additional time, they could agree on substantially all the disputes. Based upon the parties' representations, the Court agreed to give counsel additional time.  But, out of an abundance of caution, the Court discussed each request for production with counsel, and gave them the Court's informal reasoning and opinion regarding why documents responsive to the requests at issue should be produced by CoreLogic.[16] This was designed to assist the parties in their conferrals.

On August 25, 2023, Uhlig filed a motion to compel regarding the vast majority of the same requests for production discussed at the July 26, 2023, discovery conference.[17] Any response in opposition to Uhlig's motion to compel was due 14 days later, on September 8, 2023.[18] No response was filed, and the Court granted Uhlig's unopposed

---

[13] ECF No. 166.
[14] ECF No. 175.
[15] ECF No. 179.
[16] ECF No. 180.
[17] ECF No. 196.  Uhlig's motion to compel included its requests for production 93 and 95-100; the requests for production discussed at the discovery conference were numbers 93, 95, and 97-100.
[18] D. Kan. Rule 6.1(d)(1).

motion to compel, in part, on September 11, 2023.[19] At approximately 8:40 p.m. on September 11, 2023, CoreLogic filed its response in opposition to Uhlig's motion to compel.[20] No motion requesting additional time to file its response was made to the Court by CoreLogic. After reviewing CoreLogic's response in opposition, the Court entered an order on September 12, 2023, confirming its order from September 11, 2023, based, in large part, upon CoreLogic's failure to timely file its response in opposition.

The Motion now pending before the Court is CoreLogic's motion for reconsideration of the Court's ruling on Uhlig's motion to compel.[21]

## II.    Parties' Respective Positions

### 1. **CoreLogic's Position**

CoreLogic brings its Motion pursuant to D. Kan. Rule 7.3, alleging it would suffer manifest injustice if the Court does not reconsider its prior ruling on Uhlig's motion to compel.  CoreLogic alleges neither *pro hac vice* counsel nor local counsel knew it had electronic access to Uhlig's motion to compel immediately upon filing because it was filed provisionally under seal.  CoreLogic's *pro hac vice* counsel received a copy of the motion to compel when it was provided via email by counsel for Uhlig a day after it was filed, on August 26, 2023.   CoreLogic further asserts the parties agreed CoreLogic's response deadline, based upon service of the motion to compel on August 26, 2023, was September 11, 2023. Finally, CoreLogic complains manifest injustice would result if the Court does

---

[19] ECF No. 202.
[20] ECF No. 204.
[21] ECF No. 211.

5

not consider the proportionality argument it asserts in its response in opposition to Uhlig's motion to compel.

### 2. Uhlig's Position

Uhlig argues the Court's order makes it clear the September 12, 2023, ruling did not rely solely on CoreLogic's late filing, rather the Court also reviewed and considered CoreLogic's response in opposition. It further argues that all fact discovery is set to close on September 22, 2023.[22]

## III. Discussion

The Court will first review D. Kan. Rule 7.3, and CoreLogic's argument regarding manifest injustice.

### 1. D. Kan. Rule 7.3

Under D. Kan. Local Rule 7.3, a motion for reconsideration must be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." CoreLogic asserts reconsideration is warranted under the third prong, specifically, "manifest injustice." As the movant, CoreLogic bears the burden to show adequate reason to reconsider on this basis. The decision to grant or deny a motion for reconsideration is within the Court's discretion.[23] A motion for reconsideration "is appropriate where the court has misapprehended the facts, a

---

[22] ECF No. 188.
[23] *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995); *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (citing *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

party's position, or the controlling law."[24]  "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[25]  "Put another way, a party is not to pursue such a motion in order to rehash previously rejected arguments or to offer new legal theories or facts."[26]  "Nor is a motion to reconsider 'a second chance for the losing party to make its strongest case or to dress up arguments that previously failed.'"[27]

According to CoreLogic, all counsel were under the impression that sealed filings could not be accessed via the CM/ECF system by either *pro hac vice* or local counsel.[28] They also believed the local rules required them to obtain the motion to compel from the court clerk's office, which would not have been possible until September 11, 2023.[29] Finally, due to these misunderstandings, CoreLogic argues there was excusable neglect in its late filing of the response in opposition to Uhlig's motion to compel.[30] Based upon these arguments, the Court will exercise discretion and reconsider its prior ruling on Uhlig's motion to compel to the extent the motion to compel was granted as unopposed.

Having determined it will consider CoreLogic's response in opposition, the Court will now address Uhlig's motion to compel.

---

[24] *Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).
[25] *Id.*
[26] *Eckman v. Superior Indus. Int'l, Inc.*, No. 05-2318-DJW, 2007 WL 2333348, at *1 (D. Kan. Aug. 15, 2007) (citing *Achey v. Linn County Bank*, 174 F.R.D. 489, 490 (D. Kan. 1997)).
[27] *Id.* (quoting *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994)).
[28] ECF No. 211.
[29] *Id.*
[30] *Id.*

2. **Motion to Compel**

A. **Legal Standard**

Discovery is governed by Fed. R. Civ. P. 26 which provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[31] "There is a presumption in favor of disclosure of information," and, "Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on" any party's claim or defense.[32] Further, "Information within this scope of discovery need not be admissible in evidence to be discoverable."[33] Discovery should proceed "unless *it is clear* that the information can have *no possible bearing*" on the claims or defense of a party.[34]

If the discovery sought appears relevant, "the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery, 1) does not come within the scope of relevancy as defined under Rule 26(b)(1), or 2) is of

---

[31] Fed. R. Civ. P. 26(b)(1).
[32] *Williams v. UnitedHealth Grp.*, No. 18-2096-HLT, 2020 WL 528604, at *1 (D. Kan. Feb. 3, 2020) (quoting *Gilmore v. L.D. Drilling, Inc.*, No. 16-2416-JAR, 2017 WL 2439552, at *1 (D. Kan. June 6, 2017)).
[33] Fed. R. Civ. P. 26(b)(1).
[34] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (citing *Scott v. Leavenworth USD No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999) (emphasis in original)).

8

such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[35] On the other hand, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery bears the burden to show the relevancy of the request.[36] Relevancy determinations are generally made on a case-by-case basis.[37]

Discovery must be both relevant and proportional to the needs of the case. The court determines proportionality based upon consideration of the following factors: 1) the importance of the issues at stake in the action; 2) the amount in controversy; 3) the parties' relative access to relevant information; 4) the parties' resources; 5) the importance of the discovery in resolving the issues; and 6) whether the burden or expense of the proposed discovery outweighs its likely benefit.[38]

### B. Discussion

First, as previously stated, on July 26, 2023, the Court held a discovery conference regarding Uhlig's requests for production numbers 93, 95, and 97-100. The parties met and, seemingly, conferred, and they participated in a discovery conference as required prior to filing any motion to compel. However, Uhlig did not request a discovery conference regarding request for production 96 yet included that request for production in its motion to compel. Upon reconsideration, the Court upholds it prior ruling with regard to that

---

[35] *Riley v. PK Mgmt., LLC*, No. 18- 2337-KHV, 2019 WL 1509861, at *2 (D. Kan. Apr. 5, 2019) (citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003)).
[36] *Id*. (citing *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008)).
[37] *Id.* (citing *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011)).
[38] Fed. R. Civ. P. 26(b)(1).

request for production.   Uhlig failed to comply with D. Kan. Rule 37.1(a), regarding request for production 96, and CoreLogic is not compelled to further respond.

Next, CoreLogic does not dispute the relevance of the information requested by Uhlig, and the Court agrees the information sought is relevant.  Instead, CoreLogic's objections are based solely on its arguments Uhlig's requests are disproportional to the needs of the case and the overly broad definition of "Community Information" set forth by Uhlig in its discovery requests.[39] The Court will first address CoreLogic's proportionality objection.

### i.     Proportionality

The factors to be considered by the court when determining proportionality weigh in favor of Uhlig. The issues at stake involve two commercial entities, their ability to negotiate commercial contracts, enforce those agreements, misappropriating trade secrets of the other, and, finally, federal and state law pertaining to confusion, mistake, and deception in commercial activities. These are all important issues at stake and weigh in favor of Uhlig.

The amount in controversy also weighs in favor of Uhlig. Uhlig alleges a minimum of $10 million at issue in this case.[40] CoreLogic asserts its CondoSafe business failed due to Uhlig's actions.[41] Upon review of the parties' pleadings, CoreLogic alleges CondoSafe paid Uhlig over $3 million during their business relationship.[42]  With the level of discovery

---

[39] ECF No. 204.
[40] ECF No. 212.
[41] ECF No. 100.
[42] *Id.*

10

completed in this case, the Court believes the parties have determined this is a high-value case. Also, the Court, at the parties' beckoning, has addressed the significant costs incurred by the parties during discovery.[43]

The information requested by Uhlig is only available to CoreLogic; Uhlig has no other means of obtaining the information. The parties' relative access to relevant information also weighs in favor of Uhlig.

Based upon the amount in controversy, the significance of this case, and the resources expended thus far, the Court is of the belief each party has resources available to conduct this discovery, this discovery is important to resolving the issues, and has been requested by Uhlig ad nauseum. The requested information relates directly to CoreLogic's use of the information it purchased from Uhlig. Again, these two factors weigh in favor of Uhlig.

Finally, the expense of the proposed discovery does not outweigh its likely benefit. Uhlig argues it incurred significant expense in rebuilding a database in order to produce information relevant to CoreLogic's claims and defenses.[44] Now Uhlig has requested information CoreLogic claims is difficult to access. The information is clearly relevant, beneficial to Uhlig, and Uhlig has a right to the information in order to prosecute its case and establish damages. Further, CoreLogic provides extremely detailed information about the documents in question, including the specific amount of revenue CoreLogic claims it

---

[43] *See* ECF Nos. 131, 143, 161.
[44] ECF Nos. 161, 212.

collected as a result of relying on Uhlig data.[45] Uhlig has a right to gather and inspect the documents reflecting the use of the data, revenue from use of the data and the documents supporting CoreLogic's claims regarding the amount of revenue received.

The Court now turns to CoreLogic's second objection, which relates to Uhlig's definition of "Community Information."

### ii.     Overbroad

CoreLogic objects to Uhlig's definition of "Community Information" in the definition section of its requests for production as being overbroad.  The definition, as set forth by Uhlig, includes "information related to common interest communities, including condominium association and/or homeowner association information, including but not limited to mortgage questionnaires, documents related to such associations, litigation information, financial information, insurance information, and other information used for mortgage underwriting."[46] Upon review, it appears Uhlig's motion to compel narrows that definition to the information as described above that CoreLogic "obtained from Uhlig's websites."[47]

For purposes of the current disputed requests for production, "Community Information" is limited to "information related to common interest communities, including condominium association and/or homeowner association information, including but not limited to mortgage questionnaires, documents related to such associations, litigation

---

[45] ECF No. 204.
[46] ECF No. 204, exh. C.
[47] ECF No. 196.

information, financial information, insurance information, and other information used for mortgage underwriting that Defendants purchased from Plaintiff."

The Court is deeply concerned about CoreLogic's apparent questionable candor and tactics utilized in the discovery phase of this case regarding the location and use of information it purchased from Uhlig. The Court expects full disclosure and compliance with this Order and that CoreLogic will certify its response to every request for production addressed by the Court.

## IV. Conclusion

The Court has reconsidered its prior rulings (ECF Nos. 202 , 208), insofar as it relied on CoreLogic's failure to timely file it response in opposition to Uhlig's motion to compel. However, even after a more in-depth analysis of CoreLogic's response to Uhlig's motion to compel, the outcome is largely the same.

The Court **ORDERS** CoreLogic to produce documents responsive to the following requests for production and will address each request for production in turn:

### i. Request for Production No. 93:

CoreLogic shall produce any documents not previously produced regarding the origins, timing and intent of choosing the name CondoSafe. If documents were previously produced in response to this request for production, CoreLogic shall direct Uhlig to the appropriate Bates Stamp number. If no documents exist, CoreLogic shall explain what efforts it undertook to locate such documents and certify no such documents exist.

      **ii.**     **Request for Production No. 95**

CoreLogic shall produce documents not previously produced relating to all sales and marketing materials, scripts, training tools, presentations and other representations to investors, prospective investors, customers or prospective customers related to products or services that include, incorporate or are derived from Community Information purchased from Uhlig, not limited to CondoSafe materials, including Uhlig data considered in analytic products or services. If documents were previously produced in response to this request for production, CoreLogic shall direct Uhlig to the appropriate Bates Stamp number.

      **iii.**    **Request for Production No. 97**

CoreLogic shall produce documents not previously produced reflecting the flow of funds between Uhlig, CoreLogic, and CoreLogic customers, as expressly contemplated by known CoreLogic contracts, including reimbursements from third-parties for payments CoreLogic made to Uhlig, and third-party orders that are charged as a pass through and payments for those charges to purchase community information from Uhlig. If documents were previously produced in response to this request for production, CoreLogic shall direct Uhlig to the appropriate Bates Stamp number.

      **iv.**    **Request for Production No. 98**

CoreLogic shall produce documents related to how CoreLogic attempted to prevent the reuse of data it purchased from Uhlig, including any "flags," "virtual flags," or other measures used to purportedly prevent Uhlig's data from being

used in the myriad of "analytics tools," products, and services CoreLogic offers. If documents were previously produced in response to this request for production, CoreLogic shall direct Uhlig to the appropriate Bates Stamp number.

      **v.**    **Request for Production No. 99**

CoreLogic shall produce all documents not previously produced reflecting all the products and services that include or rely on data purchased from Uhlig, including but not limited to, contracts related to RealQuest, Weathermatic, or Connect2Data. If documents were previously produced in response to this request for production, CoreLogic shall direct Uhlig to the appropriate Bates Stamp number.

      **vi.**    **Request for Production No. 100**

CoreLogic shall produce documents that show annual revenues it received through licensing, products, services, analytics, and tools for which it received revenue that used or relied on community information it purchased from Uhlig. If documents were previously produced in response to this request for production, CoreLogic shall direct Uhlig to the appropriate Bates Stamp number.

**IT IS THEREFORE ORDERED** CoreLogic shall produce responsive documents **forthwith** regarding requests for production 93, 95, 97-100. If the documents are not produced on or before **September 29, 2023**, CoreLogic shall bring all responsive documents with it to the scheduled discovery conference on **October 2, 2023**.

**IT IS FURTHER ORDERED** Uhlig shall have the opportunity to review the CoreLogic documents at the conclusion of the October 2, 2023, discovery conference to

determine if it is satisfied all responsive documents were produced.  If it is not satisfied, the parties are on notice they should be prepared to remain until the Court adjourns the issues with respect to these requests for production.

      Dated September 28, 2023, in Wichita, Kansas.

                                        s/ Gwynne E. Birzer
                                        GWYNNE E. BIRZER
                                        United States Magistrate Judge