IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UHLIG LLC,** | |
| **Plaintiff/Counter Defendant,** | **Case No. 21-2543-DDC** |
| **v.** | |
| **CORELOGIC SOLUTIONS, LLC,** | |
| **Defendant/Counter Claimant.** | |

## MEMORANDUM AND ORDER

Defendant/Counter Claimant CoreLogic Solutions, LLC has filed a Motion to Review

(Doc. 259).  Mere days before the close of fact discovery, CoreLogic disclosed 17 new fact

witnesses.  Plaintiff/Counter Defendant Uhlig LLC understandably took issue with CoreLogic's

last-minute disclosure.  The Magistrate Judge agreed with Uhlig and struck many of CoreLogic's

late-disclosed witnesses.  The Magistrate Judge's message was simple, and it was clear:

CoreLogic knew about these witnesses months ago and should've disclosed them much earlier

than it did.  CoreLogic now has filed a Motion to Review (Doc. 259), asking this court to reverse

the Magistrate Judge's Order (Doc. 257).  As explained below, the court denies CoreLogic's

Motion to Review and overrules each one of its objections.

## I.      Background

The court has issued many orders in this case and assumes the reader's familiarity with

this case's background.  So, the court recites only the facts relevant to decide CoreLogic's

Motion to Review.  Each side of the caption has its own view how this struck-witnesses dispute

arose.  The court starts with CoreLogic's view.

### *CoreLogic's View*

According to CoreLogic, on July 3, 2023, Uhlig produced damning emails showing Uhlig had notice of CoreLogic's alleged data misuse in 2016.  After this production, "Uhlig then pivoted to focusing almost entirely on new claims."  Doc. 260 at 2.  On July 28, Uhlig told CoreLogic of its plan to file a Second Amended Complaint to add claims for trade secret misappropriation and unjust enrichment.  *See* Doc. 261-5 at 2 (CoreLogic Ex. 5).  And on July 31, CoreLogic informed Uhlig that it didn't oppose Uhlig filing a Second Amended Complaint. *See* Doc. 261-6 at 3 (CoreLogic Ex. 6).  Uhlig filed its Second Amended Complaint on August 21.  Doc. 193.

Uhlig's Second Amended Complaint mentioned what CoreLogic calls the transfer of "a relatively minute amount of Uhlig data . . . from the CondoSafe database to other CoreLogic databases."  Doc. 260 at 2.  CoreLogic acknowledges that, initially, it told Uhlig that it kept Uhlig's data in the CondoSafe database only.  *Id.* at 2–3.  But, later, CoreLogic realized some its employees had transferred Uhlig's data to databases outside CondoSafe.  *Id.* at 3.  So, CoreLogic engaged in a "complex and time-consuming" investigation.  *Id.*  Ultimately, according to CoreLogic, this investigation showed no more than trivial use of Uhlig's data outside of CondoSafe.

When it finished its database investigation, CoreLogic "detailed its findings in a supplemental discovery response" served on September 11, 2023—11 days before the Rule 30(b)(6) deposition of CoreLogic's corporate representative.  *Id.*  CoreLogic then supplemented its Rule 26 disclosures on September 18 to identify additional witnesses.  *Id.*  Uhlig already had deposed three of these additional witnesses—so it already knew of them.  *Id.*  And CoreLogic also identified 12 witnesses "who had confirmed information for the discovery response detailing the investigation."  *Id.*  On September 20, CoreLogic added a witness it inadvertently had

forgotten—Robert Jennings—who had not participated in the database investigation. *Id.* This forgotten witness caused no prejudice to Uhlig because, CoreLogic avers, Uhlig already had notice of Mr. Jennings's relevant knowledge. *Id.* at 7.

Fact discovery closed September 22. Though CoreLogic had disclosed these 17 witnesses close to this deadline, Uhlig had an opportunity to ask CoreLogic's Rule 30(b)(6) representative about CoreLogic's use of Uhlig's data outside CondoSafe. *See* Doc. 261-13 (CoreLogic Ex. 13). At first, when Uhlig received these disclosures, Uhlig told CoreLogic it planned to ask the court for additional discovery time to depose these witnesses. Doc. 260 at 3. Then, Uhlig changed its position, moving, instead, to strike the witnesses. *Id.*

### Uhlig's View

Now consider Uhlig's view. In February 2022, Uhlig served discovery on CoreLogic asking about CoreLogic's uses of Uhlig's data. *See, e.g.*, Doc. 276-3 at 8 (Uhlig Ex. 2) ("Identify all . . . products sold by CoreLogic . . . into which information received from Uhlig has been incorporated[.]"). CoreLogic maintained that it only had used Uhlig's data in its CondoSafe product and only stored the data in its CondoSafe databases. *See, e.g.*, Doc. 276-4 at 7 (Uhlig Ex. 3) (responding to Uhlig discovery that only CondoSafe received Uhlig data). But, in March 2023, CoreLogic produced an email that mentioned a "weekly feed/sync" between the CondoSafe database and another CoreLogic database called Diablo. *See* Doc. 276-5 at 2 (Uhlig Ex. 4).

Uhlig quickly served additional discovery, asking for more information about this "weekly feed/sync." In May 2023, CoreLogic asked Uhlig to extend CoreLogic's deadline to respond while CoreLogic conducted its database investigation. On May 16, CoreLogic explained, "One of the material CoreLogic individuals with knowledge of the databases has been out on vacation." Doc. 276-6 at 2 (Uhlig Ex. 5). On May 31, CoreLogic told Uhlig it was "close

3

to having all the facts necessary to substantively respond" to Uhlig's discovery.  Doc. 276-7 at 2

(Uhlig Ex. 6).  CoreLogic responded to the discovery on June 15.  And on June 22, Uhlig

deposed a CoreLogic employee who confirmed that CoreLogic had stored Uhlig data in the

Diablo database.  Doc. 276-8 at 3–4 (Doty Dep. 165:8–166:13).  So, Uhlig contends,

CoreLogic's previous discovery responses were false.  Uhlig maintains that it long had suspected

that CoreLogic used its data outside of CondoSafe.  But CoreLogic only confirmed these

suspicions late in the game and, even then, didn't fully explain whether other CoreLogic

products and databases had used Uhlig data.

Uhlig deposed another CoreLogic employee on September 18, and he disclosed two other

databases that used Uhlig's data:  OneSource and SDP.  Doc. 276-12 at 3–5, 6–7 (Jensen Dep.

61:4–63:19, 70:21–71:12).  On September 22, Uhlig asked CoreLogic's Rule 30(b)(6) witness

about these new databases, but the witness had no knowledge about CoreLogic's data feeds from

CondoSafe to other databases.  Doc. 276-14 at 3–6 (CoreLogic 30(b)(6) Dep. 47:8–50:24).

With mere days remaining before the fact discovery deadline, CoreLogic disclosed 17

new fact witnesses.  Uhlig took serious issue with this late disclosure because, though CoreLogic

began its database investigation in May 2023, it didn't supplement its Rule 26 disclosures until

September 18—four days before fact discovery closed.  Uhlig then moved to strike Uhlig's late-

disclosed witnesses.

The court turns next to the subject of CoreLogic's Motion to Review:  the Magistrate

Judge's rulings.

### *The Magistrate Judge's Order*

Uhlig filed its Motion to Strike (Doc. 245), and the Magistrate Judge denied the motion

without prejudice to refiling to allow for a discovery conference.  Doc. 248.  When she denied

the motion, the Magistrate Judge also scheduled a discovery conference.  *Id.*  Before the

discovery conference, the Magistrate Judge emailed the parties, telling them she would review

Uhlig's Motion to Strike before the discovery conference and inviting CoreLogic to submit a

five-page position statement.  Doc. 261-20 at 2 (CoreLogic Ex. 20).  CoreLogic complied and

submitted a five-page, single-spaced position statement.  *See generally* Doc. 261-23 (CoreLogic

Ex. 23).

At the discovery conference, the Magistrate Judge cut straight to the point, asking

CoreLogic's counsel, "Seventeen additional witnesses, Mr. Adams?  Seventeen?  Seventeen."

Doc. 261-21 at 4 (Hr'g Tr. 3:11–12).  The Magistrate Judge explained that CoreLogic should've

supplemented its Rule 26 disclosures before August 11.  *Id.* at 5–6 (Hr'g Tr. 4:22–5:6).

CoreLogic explained that 13 of the 17 new witnesses "were involved in the investigation"

into CoreLogic's databases.  *Id.* at 4–5 (Hr'g Tr. 3:13–4:15).  And CoreLogic had served its

supplemental interrogatory response to confirm the results of its investigation.  *Id.*  CoreLogic

argued it merely was responding to the theory Uhlig first introduced into the case in August

2023.  *Id.* at 10 (Hr'g Tr. 9:21–24).  And CoreLogic told the Magistrate Judge that it "understood

the deadline for supplementation is 40 days before the close of all discovery, which is September

20[.]"  *Id.* at 10–11 (Hr'g Tr. 9:25–10:4).  CoreLogic also emphasized that, by the time of

CoreLogic's Rule 30(b)(6) deposition, Uhlig had the infamous list of witnesses, but Uhlig had

"studiously avoided asking about any of the witnesses who had been disclosed a few days before,

and that was what [CoreLogic] understood was going to happen."  *Id.* at 11–12 (Hr'g Tr. 10:22–

11:5).  Nonetheless, CoreLogic acknowledged, "the court's position . . . that it needs to allow

time for parties to do follow-up discovery."  *Id.* at 10–11 (Hr'g Tr. 9:25–10:4).

The Magistrate Judge told CoreLogic that, in her view, CoreLogic "knew . . . who to

designate or who to disclose . . . before the deadline."  *Id.* at 5 (Hr'g Tr. 4:16–21).  The

Magistrate Judge informed CoreLogic that she planned to strike the witnesses, emphasizing "the whole spirit behind striking witnesses is so that [parties will] designate them in enough time for . . . the other side to be able to conduct the discovery that they need." *Id.* at 6 (Hr'g Tr. 5:16–25). The Magistrate Judge explained that CoreLogic had "tied [her] hands[.]" *Id.* at 8 (Hr'g Tr. 7:10–13).

The Magistrate Judge ruled she would strike witnesses identified in documents produced after August 11. *Id.* at 7 (Hr'g Tr. 6:11–21). And to decide which of the 17 witnesses to strike, the Magistrate Judge discussed each witness by name, individually determining when CoreLogic had identified that witness. After the discovery conference, the Magistrate Judge entered the following Order, memorializing her rulings:

> After reviewing Uhlig's Motion to Strike Defendants' Newly Disclosed Witnesses (ECF No. 245), CoreLogic's position statement, additional documents from each party, hearing arguments of counsel, and thoroughly reviewing the court's docket, the Court ORDERS:  1) The Court strikes Constance Leon, Anton Scheepers, August Harrison, Dheepan Thirumalaiappan, Nick Wazenreid, Neeraj Kumar, Sachin Rajpal, Robert Jennings, Daniel Nguyen, Steph Woo, Soffi Sridharan, and Rajani Jothikumar as fact witnesses from CoreLogic's supplemental and second supplemental disclosures pursuant to Fed. R. Civ. P. 26 for the reasons discussed at the discovery conference; 2) Scott Zielan shall likewise be stricken if he was not identified through CoreLogic's deposition exhibit prior to 8/11/23[.]

Doc. 257.

CoreLogic responded, by filing this Motion to Review (Doc. 259), asking this the court to review the Magistrate Judge's Order. The court begins its analysis by reciting the governing legal standard.

## II.    Legal Standard

When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "'clearly erroneous or contrary to law'" standard of review. *See First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v.*

*Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)); *see also* 28 U.S.C. § 636(b)(1)(A);

Fed. R. Civ. P. 72(a).  Under this clearly erroneous standard, a district judge does not review

factual findings de novo; instead, it must affirm a magistrate judge's findings unless a review of

the entire evidence leaves the district judge "with the definite and firm conviction that a mistake

has been committed."  *Ocelot Oil Corp.*, 847 F.2d at 1464 (citation and internal quotation marks

omitted).  In contrast, "the contrary to law" standard permits a district judge to conduct an

independent review of purely legal determinations made by the magistrate judge.  *Sprint*

*Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007)

(citations omitted).  A magistrate judge's order is contrary to law when it "fails to apply or

misapplies relevant statutes, case law or rules of procedure."  *Walker v. Bd. of Cnty. Comm'rs of*

*Sedgwick Cnty.*, No. 09-1316, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (citation

omitted).

## III.      Analysis

CoreLogic asserts five objections to the Magistrate Judge's October 31 Order.  Doc. 259

at 1–2.  The court recites and analyzes each one, in turn, below.  The court overrules all five

objections.

### A.      The Magistrate Judge didn't clearly err by using August 11 as the deadline for CoreLogic to disclose additional fact witnesses.

First, CoreLogic argues the Magistrate Judge's Order is clearly erroneous and contrary to

law because the Magistrate Judge used August 11 as CoreLogic's deadline to supplement its

disclosures.  Instead, according to CoreLogic, September 20 was the deadline.  The court briefly

explains how CoreLogic calculated this September 20 deadline, then it explains how the

Magistrate Judge calculated an August 11 deadline.

The case's original Scheduling Order required the parties to serve all supplemental disclosures "40 days before the deadline for completion of all discovery." Doc. 39 at 3. The Magistrate Judge amended this Scheduling Order three separate times over the course of the case. Despite these amendments, CoreLogic argues, the deadline to supplement disclosures always remained the same: 40 days before the completion of all discovery. And, in this case, the Third Amended Scheduling Order set the deadline for the parties to complete all discovery by October 31, 2023. Doc. 188 at 3. So, according to CoreLogic, it had until September 20 to supplement its disclosures. Under CoreLogic's view that a September 20 deadline applied, its September 18 and September 20 disclosures don't look quite so bad.

The Magistrate Judge disagreed with CoreLogic's position. She distinguished between fact discovery and all discovery. She held that CoreLogic had until August 11 to supplement its disclosures with fact witnesses because fact discovery closed on September 22. *See id.*; Doc. 261-21 at 15 (Hr'g Tr. 14:11–17 ("If you're designating fact witnesses, it should've been disclosed by August 11th.")). The court finds the Magistrate Judge reasonably interpreted the Scheduling Order when she concluded that CoreLogic needed to identify additional fact witnesses by August 11—40 days before the close of fact discovery.

To be sure, the original Scheduling Order gives the parties until 40 days before the close of "all discovery" to supplement their disclosures. Doc. 39 at 3. But that original Scheduling Order didn't distinguish between fact discovery, expert discovery, and all discovery. That is, under the original Scheduling Order, the parties had to complete all discovery—whether fact driven or expert driven—by December 16, 2022. *Id.* at 13. It didn't set a special deadline for the end of fact discovery. The First Amended Scheduling Order envisioned a similar approach: expert reports due in May 2023, before all discovery concluded by June 16, 2023. Doc. 88 at 2.

In contrast, the Revised Second Amended Scheduling Order introduced a fact discovery overlay—*i.e.*, it required the parties to complete fact discovery by July 31, 2023, with expert report deadlines in August and September, and "[a]ll discovery completed" by October 6.  Doc. 117 at 3.  And the Third Amended Scheduling Order also used a fact discovery overlay:  fact discovery completed by September 22, expert discovery throughout October, and all discovery completed October 31.  Doc. 188 at 3.

So, between the First Amended Scheduling Order and the Second Amended Scheduling Order, the parties inserted a deadline for fact discovery.  Given this shift to include a fact discovery deadline, the Magistrate Judge reasonably concluded that the deadline to disclose *fact* witnesses shifted as well.  After all, what's a party to do when its opponent discloses a fact witness after fact discovery has closed?  As the Magistrate Judge put it, "the whole spirit behind striking witnesses is so that you designate them in enough time for . . . the other side to be able to conduct the discovery that they need."  Doc. 261-21 at 6 (Hr'g Tr. 5:16–25).  Under CoreLogic's approach, CoreLogic could disclose fact witnesses after fact discovery closed—but before all discovery closed—and Uhlig couldn't depose them without asking the court for more time to conduct fact discovery.  The Magistrate Judge's interpretation of this case's Scheduling Orders avoids this undesirable result.  In short, the Magistrate Judge's view is a reasonable one.

The court thus overrules CoreLogic's objection.  Perhaps the parties and the court could've constructed the Scheduling Orders in a more explicit fashion.  But the court simply doesn't have "the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp.*, 847 F.2d at 1464 (citation and internal quotation marks omitted).  Because it's plausible to interpret the Scheduling Order to set August 11 as the deadline to supplement disclosures with fact witnesses, and considering the broad discretion afforded in the management of discovery,

the Magistrate Judge's decision wasn't clearly erroneous or contrary to law.  "Where there are

two plausible views, a decision cannot be 'clearly erroneous.'"  *Lowe v. Vadlamudi*, No. 08-

10269, 2012 WL 1229949, at *3 (E.D. Mich. Apr. 12, 2012) (quoting *Anderson v. City of

Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)) (overruling objection to magistrate judge

decision where magistrate judge had interpreted amended scheduling order appropriately).

> **B.**     **The Magistrate Judge didn't commit clear error or act contrary to law by
> striking ten witnesses who, according to CoreLogic, only became relevant
> after August 11.**

CoreLogic next objects to the Magistrate Judge's decision to strike 10 witnesses who,

according to CoreLogic, "relate solely to claims Uhlig alleged for the first time via its [Second

Amended Complaint] on August 21[.]"  Doc. 260 at 6.  CoreLogic points out that the governing

rule only requires a party to disclose witnesses whom "the disclosing party may use to support its

claims or defenses[.]"  Fed. R. Civ. P. 26(a)(1)(A)(i).  CoreLogic argues that Uhlig's Second

Amended Complaint added the claims about CoreLogic's use of Uhlig's data outside of

CondoSafe.  So, CoreLogic argues, because Uhlig filed its Second Amended Complaint on

August 21, 2023, CoreLogic had no reason to disclose the relevant database witnesses before

August 21—10 days after the Magistrate Judge's August 11 deadline to disclose additional fact

witnesses.  CoreLogic thus asserts that the Magistrate Judge clearly erred and acted contrary to

law.  The court again disagrees with its position.

This dispute boils down to CoreLogic's database investigation.  Indeed, these 10

witnesses have knowledge of CoreLogic's database investigation.  Uhlig's Second Amended

Complaint didn't trigger CoreLogic to commence its database investigation—CoreLogic's

discovery obligations did.  *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party who has . . . responded to

an interrogatory . . . must supplement or correct its . . . response . . . in a timely manner if the

party learns that in some material respect the . . . response is incomplete or incorrect[.]").

CoreLogic initially responded to discovery by telling Uhlig that it didn't use Uhlig data outside of the CondoSafe product. *See* Doc. 276-3 at 8 (Uhlig Ex. 2) ("Identify all . . . products sold by CoreLogic . . . into which information received from Uhlig has been incorporated[.]"); Doc. 276-4 at 7 (Uhlig Ex. 3) ("CoreLogic responds as follows:  CondoSafe.").  When CoreLogic produced documents that cast doubt on the accuracy of CoreLogic's initial discovery responses, CoreLogic began to investigate its databases.  Indeed, CoreLogic had initiated this investigation in May 2023—long before Uhlig filed its Second Amended Complaint in August 2023.  The Magistrate Judge correctly concluded that CoreLogic knew about these witnesses long before it disclosed them.  So, the Magistrate Judge didn't clearly err or act contrary to law by concluding that CoreLogic had reason to disclose these witnesses before August 2023.

**C.      The Magistrate Judge didn't clearly err by striking Robert Jennings.**

CoreLogic objects that the Magistrate Judge erroneously struck Robert Jennings as a witness.  Doc. 260 at 7.  CoreLogic argues that it identified Mr. Jennings to Uhlig twice:  (i) during a deposition on June 6, 2023, and (ii) during a meet and confer on September 4, 2023.  *Id.* CoreLogic faults Uhlig for failing to depose Mr. Jennings and cure any potential prejudice.

The September 4 disclosure doesn't help CoreLogic because it's beyond the Magistrate Judge's August 11 deadline.  The June 6 deposition doesn't help CoreLogic, either.  The deposition contains a single reference to Mr. Jennings as the person who decided to shut down CondoSafe.  *See* Doc. 261-9 at 5–6 (Morton Dep. 135:23–136:18).  The court declines to find this single reference sufficient to obligate Uhlig to depose Mr. Jennings.  And, in any event, the court agrees with the Magistrate Judge:  CoreLogic should've disclosed Mr. Jennings earlier. The Magistrate Judge explained that Mr. Jennings possessed information about CondoSafe, and the parties have "talked about CondoSafe from the beginning of this case[.]"  Doc. 261-21 at 25 (Hr'g Tr. 24:13–20).  The court agrees with the Magistrate Judge.  Given the importance of

CondoSafe, CoreLogic should've disclosed Mr. Jennings much sooner.  The court thus overrules

CoreLogic's objection to the Magistrate Judge's decision to strike Mr. Jennings.

> **D.      The Magistrate Judge did not clearly err when she struck four witnesses who participated in the database inspection.**

CoreLogic's fourth objection focuses on the Magistrate Judge's decision to strike four

witnesses who participated in an October 2023 inspection of CoreLogic's databases.  Doc. 259 at

2.  The Magistrate Judge granted Uhlig's request to inspect CoreLogic's databases on October 2,

2023.  Doc. 223; *see* Doc. 226 at 25 (Hr'g Tr. 26:2–6).  Uhlig inspected the databases on October

6, 7, and 12.  Doc. 260 at 8.  CoreLogic calls the inspections "extensive discovery that took place

after the fact discovery cut-off."  *Id.*  And CoreLogic points out that Uhlig's experts rely on

statements from these witnesses during the inspections.  *Id.*  So, according to CoreLogic, the

inspections and the witnesses' statements cure any prejudice to Uhlig from the late disclosure of

these witnesses.  *Id.*  CoreLogic also argues Uhlig had a variety of opportunities to depose these

witnesses and accuses Uhlig of "tactically decid[ing] not to take any discovery about the

witnesses to curate its alleged prejudice[.]"  *Id.* at 9.

The Magistrate Judge concluded that CoreLogic should've known about the witnesses "at

the point that the systems were having to be tinkered with[.]"  Doc. 261-21 at 5 (Hr'g Tr. 4:16–

21).  The Magistrate Judge reasoned that because CoreLogic knew which witnesses operate each

relevant CoreLogic database, CoreLogic knew who to disclose long before September 2023.  *Id.*

The court can find no fault in this reasoning.  The Magistrate Judge properly focused on

CoreLogic's failure to satisfy its Rule 26(e) obligation to supplement its discovery responses.

The court declines to allow CoreLogic to escape the consequences of this failure by nitpicking

Uhlig's discovery strategy.  The court thus overrules CoreLogic's objection.

> **E.      The Magistrate Judge didn't act contrary to law by using an expedited procedure to decide whether to strike the witnesses.**

For its last objection, CoreLogic asserts that the Magistrate Judge's October 31 "Order is contrary to law because it contravened the Local Rules and denied CoreLogic a full and fair opportunity to present its response to the Motion." Doc. 259 at 2. CoreLogic's objection focuses on the Magistrate Judge's procedure: She denied Uhlig's Motion to Strike without prejudice, scheduled a discovery conference, allowed CoreLogic to submit a position statement, and then ruled on the issues at a discovery conference. CoreLogic asserts the Magistrate Judge "bypass[ed] motion procedures" and, as a result, acted contrary to law. Doc. 260 at 10.

CoreLogic correctly notes that our local rules imagine a different procedure than the one the Magistrate Judge applied. While not a textbook application of our local rules, the procedure used by the Magistrate Judge is excused by the time pressure created by CoreLogic's conduct. Nor is the court persuaded that the Magistrate Judge denied CoreLogic "a full and fair opportunity to presents its response to the Motion." Doc. 259 at 2. CoreLogic never has identified a response it would have made had it received more time. The Magistrate Judge allowed CoreLogic to submit a five-page, single-spaced position statement. In this court's extensive experience with the parties' papers in this case, five single-spaced pages was plenty.

## IV.        Conclusion

The court thus denies CoreLogic's Motion to Review (Doc. 259) and overrules each of CoreLogic's objections to the Magistrate Judge's Order (Doc. 257).

**IT IS THEREFORE ORDERED BY THE COURT THAT** CoreLogic's Motion to Review (Doc. 259) is denied.

**IT IS SO ORDERED.**

**Dated this 6th day of June, 2024, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

13